# UNITED STATES ET AL. *v.* L. A. TUCKER TRUCK LINES, INC.

No. 18.   Argued October 20, 1952.—Decided November 10, 1952.

*Edward M. Reidy* argued the cause for the United States and the Interstate Commerce Commission. With him on the brief were *Acting Solicitor General Stern, Acting Assistant Attorney General Clapp, Robert W. Ginnane* and *Charles H. Weston. Philip B. Perlman,* then Solicitor General, and *Daniel W. Knowlton,* then Chief Counsel for the Interstate Commerce Commission, were on the Statement as to Jurisdiction.

*B. W. La Tourette* argued the cause for appellee. With him on the brief was *G. M. Rebman.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

One Cunningham applied to the Interstate Commerce Commission for a certificate of public convenience and necessity to authorize extension of his existing motor carrier route.[1] A railroad and eleven motor carriers, including appellee, intervened to oppose. The issues were referred to an examiner who after hearing recommended that, with exceptions not material here, a certificate be granted. Appellee excepted, whereupon Division 5 of the Commission, in substance, approved the recommendation. Appellee requested reconsideration by the full Commission, which was denied, and then petitioned for "extraordinary relief," which also was refused. The Commission thereupon issued a certificate to Cunningham. Appellee, upon the ground that the evidence did not show need for the additional transportation service, petitioned the District Court to set aside the certificate and order. The Commission and the United States answered and a three-judge court was convened.

---

[1] 49 U. S. C. § 307.

On the day appointed for hearing, appellee moved for leave to amend its petition to raise, for the first time, a contention that the Commission's action was invalid for want of jurisdiction because the examiner had not been appointed pursuant to § 11 of the Administrative Procedure Act.[2] The District Court allowed amendment and, upon proof that the appointment had not been in accordance with that Act, invalidated the order and certificate without going into the merits of the issue tendered in the original complaint.[3] This appeal by the United States and the Interstate Commerce Commission raises but a single question—whether such an objection, first made at that stage of the proceedings, was not erroneously entertained. We hold that it was.

Appellee did not offer nor did the court require any excuse for its failure to raise the objection upon at least one of its many opportunities during the administrative proceeding. Appellee does not claim to have been misled or in any way hampered in ascertaining the facts about the examiner's appointment. It did not bestir itself to learn the facts until long after the administrative proceeding was closed and months after the case was at issue in the District Court, at which time the Commission promptly supplied the facts upon which the contention was based and sustained.

The apparent reason for complacency was that it was not actually prejudiced by the conduct or manner of appointment of the examiner. There is no suggestion that he exhibited bias, favoritism or unfairness. Nor is there ground for assuming it from the relationships in the proceeding. He did not act and was not expected to act both as prosecutor and judge. The Commission, which appointed him, did not institute or become a party in

---

[2] 5 U. S. C. § 1010.
[3] 100 F. Supp. 432.

interest to the proceeding. Neither it nor its examiner had any function except to decide justly between contestants in an adversary proceeding. The issue is clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits and can prevail only from technical compulsion irrespective of considerations of practical justice.

In *Riss & Co.* v. *United States,* 341 U. S. 907, this Court held that officers hearing applications for certificates of convenience and necessity under § 207 (a) of the Interstate Commerce Act are subject to the provisions of the Administrative Procedure Act.[4] But timeliness of the objection was not before us, because in that case the examiner's appointment had been *twice* challenged in the administrative proceedings, once, as it should have been, before the examiner at the hearings and again before the Commission on a petition for rehearing. That decision established only that a litigant in such a case as this who does make such demand at the time of hearing is entitled to an examiner chosen as the Act prescribes.

We have recognized in more than a few decisions,[5] and Congress has recognized in more than a few statutes,[6]

---

[4] Our decision in the *Riss* case was announced after the administrative proceeding herein, but before the District Court's hearing. *Riss* apparently prompted appellee to raise the point about the examiner's qualifications in the District Court.

[5] *Spiller* v. *Atchison, T. & S. F. R. Co.,* 253 U. S. 117, 130; *United States ex rel. Vajtauer* v. *Commissioner,* 273 U. S. 103, 113; *United States* v. *Northern Pacific R. Co.,* 288 U. S. 490, 494; *Unemployment Compensation Commission of Alaska* v. *Aragon,* 329 U. S. 143, 155.

[6] Section 9 (a) of the Securities Act of 1933, 15 U. S. C. § 77i; § 25 (a) of the Securities Exchange Act of 1934, 15 U. S. C. § 78y; § 24 of the Public Utility Holding Company Act, 15 U. S. C. § 79x; § 10 of the Fair Labor Standards Act, 29 U. S. C. § 210; § 10 (e) of the National Labor Relations Act, 29 U. S. C. § 160 (e).

that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. It is urged in this case that the Commission had a predetermined policy on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence.[7] Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

It is argued, however, that this case falls outside of this general rule and the result below is technically compelled because, if the appointment of the hearing examiner was irregular, the Commission in some manner lost jurisdiction and its order is totally void. This inference is drawn from our decision in *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, for it is contended we could not have sustained a collateral attack by writ of habeas corpus in that case unless we found the defect in that examiner's appointment to be one of jurisdictional magnitude. We need

---

[7] The Government informs us that in about five thousand cases commenced after the effective date of the Administrative Procedure Act, orders are for an indefinite period vulnerable to attack if no timely objection during the administrative process is required. The policy of the Commission is to grant application for rehearing in cases where applicant made the objection before the examiner. Since its established practice is not to consider issues not raised before the examiner, it will refuse rehearings in other cases.

not inquire what should have been the result upon that case had the Government denied or the Court considered whether the objection there sustained was taken in time. The effect of the omission was not there raised in briefs or argument nor discussed in the opinion of the Court. Therefore, the case is not a binding precedent on this point.[8] Even as to our own judicial power or jurisdiction, this Court has followed the lead of Mr. Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*.[9]

The question not being foreclosed by precedent, we hold that the defect in the examiner's appointment was an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings. But it is not one which deprives the Commission of power or jurisdiction, so that even in the absence of timely objection its order should be set aside as a nullity.

The judgment is reversed and the cause remanded to the District Court for determination on the merits.

*Reversed.*

Mr. Justice Frankfurter, dissenting.

Were we dispensing what is complacently called oriental justice, according to which the merits of the individual case alone, so one is told, determine the result, I would join my brethren in reversing this judgment. For I see no reason to disagree with the Court's view that in this case non-compliance by the Interstate Commerce Commission with the requirements of the Administrative

---

[8] *Webster* v. *Fall*, 266 U. S. 507.

[9] *United States* v. *More*, 3 Cranch 159, 172; *Snow* v. *United States*, 118 U. S. 346, 354; *Cross* v. *Burke*, 146 U. S. 82, 87; *Louisville Trust Co.* v. *Knott*, 191 U. S. 225, 236; *Arant* v. *Lane*, 245 U. S. 166, 170.

Procedure Act did not prejudice the appellee. Nor do I deny that some rights personal to a party may be waived, either explicitly or by failure to assert them.

But I find no explicit waiver here, nor is it clear to me how the appellee can be charged with knowledge of the official status of the examiner on the basis of whose report the Commission took action adverse to it. In any event, the requirement of the Administrative Procedure Act that proceedings which lead to an administrative adjudication must be conducted by an independent hearing examiner is not something personal to a party. It is a requirement designed to assure confidence in the administrative process by defining and limiting the various organs through which that process is allowed to function.

I do not use the term "jurisdiction" because it is a verbal coat of too many colors. But we are dealing with legislation which sought to remedy what were believed to be evils in the way in which administrative agencies exercised their authority prior to the enactment of the Administrative Procedure Act of June 11, 1946. That Act accordingly prohibited the commingling of the conflicting functions exercised by these agencies. I do say, therefore, that it created unwaivable limitations upon the power of these agencies, as much so as do the definitions in judiciary acts of the different categories of cases which different courts are empowered to hear and decide. The limitations upon the power of the Interstate Commerce Commission to act, imposed by the command that it must do so only in accordance with the requirements of the Administrative Procedure Act, are thus not within the dispensing power of any litigant. They bind and confine the Commission itself.

I cannot otherwise read what we decided in *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, and *Riss & Co., Inc.* v. *United States,* 341 U. S. 907. I do not rest my conclusion on any assumption of jurisdiction *sub silentio* in the *Wong*

*Yang Sung* case. What I am resting on is the significance we attached to the requirement of independent hearing examiners as inherent in the process of administrative adjudication.

After we decided *Wong Yang Sung* v. *McGrath, supra,* Congress was promptly asked to relieve the deportation process of this requirement and it did so. See Chapter III of the Supplemental Appropriation Act, 1951 (Act of September 27, 1950, 64 Stat. 1044, 1047). After we made the same ruling as to the Interstate Commerce Commission, Congress was promptly asked to validate proceedings previously conducted by the Commission in disregard of the requirements for independent hearing examiners. Congress has chosen not to enact such remedial legislation.[1] I do not construe this want of action as controlling upon the issue before us. I refer to this subsequent legislative history merely as an indication of the path by which undesirable consequences flowing from our decision in *Riss & Co., Inc.* v. *United States, supra,* may be corrected without injustice. Situations like this arise from time to time when decisions of this Court in the observance of law suggest corrective legislation. See, *e. g., United States* v. *Heinszen & Co.,* 206 U. S. 370.

MR. JUSTICE DOUGLAS, dissenting.

This decision gives a capricious twist to the law. One would assume from a reading of the opinion in *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, that the failure of a federal agency to use the type of examiner prescribed by Congress in the Administrative Procedure Act, 60 Stat. 237, 5 U. S. C. § 1001 *et seq.,* vitiated the proceedings whether objection was raised or not. The Congress de-

---

[1] A remedial bill was successful in the House but failed in the Senate. The bill was H. R. 5045. See H. R. Rep. No. 1637, 82d Cong., 2d Sess.

cided to separate the judicial functions of examiners from the investigative and prosecuting functions. It required the separation in cases involving property interests as well as those involving personal liberty. It condemned as unfair a practice which had grown up of allowing one man to be the police officer, the prosecutor, and the judge.

Violation of that requirement led the Court in *Wong Yang Sung's* case to issue a writ of habeas corpus to save an alien from deportation where the hearing examiner did not meet the requirements of the Administrative Procedure Act. That was a collateral attack on the administrative proceeding, successfully made even though no objection to the examiner was raised at the hearing.*

The objection raised in the present case likewise was not made at the hearing; but it was made before review of the order had been completed. It would seem, therefore, that reversal of this administrative order would follow *a fortiori* from *Wong Yang Sung's* case.

No one knows how the commingling of police, prosecutor and judicial functions in one person may affect a particular decision. In some situations it might make no difference; in others it might subtly corrupt the administrative process. The only important consideration for us is that Congress has condemned the practice; and we as supervisors of the federal system should see to it that the law is enforced, not selectively but in all cases coming before us.

Of course, an agency that flouts the mandate for fair examiners does not lose jurisdiction of the case. Even habeas corpus is no longer restricted to the testing of "jurisdiction" in the historic sense. See *Johnson* v. *Zerbst,* 304 U. S. 458, 467; *Bowen* v. *Johnston,* 306 U. S.

---

*And the alien in that case, like the respondent here, was represented by counsel in the administrative proceedings.

42

19, 24.   But the action of the Commission in the present case created an error that permeates the entire proceeding. It is error that goes to the very vitals of the case.   I would therefore set aside the order and send the case back for a hearing that meets the statutory standards of fairness. I would make the rule of *Wong Yang Sung's* case good for more than the day and the occasion.