**GLAZIERS' LOCAL NO. 558, a/w Brotherhood of Painters, Decorators and Paperhangers of America, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GLAZIERS' LOCAL NO. 558, a/w Brotherhood of Painters, Decorators and Paperhangers of America, AFL–CIO, Respondent.**

**Nos. 21781, 21883.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 30, 1968.

Decided Jan. 23, 1969.

Mr. Lewis F. Grayson, of the bar of the Supreme Court of Oklahoma, pro hac vice, by special leave of court, with whom Messrs. David S. Barr and William B. Peer, Washington, D. C., were on the brief, for petitioner in No. 21,781 and respondent in No. 21,883.

Mrs. Clarice Feldman, Atty., National Labor Relations Board, of the bar of the Supreme Court of Wisconsin, pro hac vice, by special leave of court, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Glen M. Bendixsen, Atty., National Labor Relations Board, were on the brief, for respondent in No. 21,781 and petitioner in No. 21,883.

Before WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

The petitioner in this action is a local Glaziers' union affiliated with the

Brotherhood of Painters, Decorators and Paperhangers of America, AFL-CIO. The National Labor Relations Board issued a decision (165 N.L.R.B. No. 27) finding that appellant, because its secondary picketing was intended to and actually did cause a work stoppage, violated Section 8(b) (4) (i) and (ii) (B) [1] of the National Labor Relations Act.[2] We find that the Board's decision is supported by substantial evidence in the record and consequently its order shall be enforced.

This dispute is largely factual and therefore the circumstances involved will be set out in detail. Cupples Products Corporation (hereinafter "Cupples") manufactures preglazed windows in St. Louis, Missouri. Cupples then sells these preglazed windows to various wholesale distributors. One such wholesale distributor is the B. D. & R. Engineering Corporation (hereinafter "B. D. & R."). In turn, B. D. & R. ships preglazed windows to various purchasers. One such purchaser is Sharp Bros. Contracting Co. (hereinafter "Sharp Bros."). During the period of time pertinent to this litigation Sharp Bros. was the general contractor engaged in the construction of an office building in Kansas City, Missouri. On this particular construction site the Royse Masonry Co., Inc. (hereinafter "Royse") was hired as a subcontractor by Sharp Bros. to do the masonry work at the construction site. Both Sharp Bros. and Royse are members of the Builders' Association of Kansas

City, Missouri (hereinafter "Builders"). Builders is an association which bargains with various labor organizations on behalf of various employers, individuals, firms, and corporations involved in the building industry.

On or about April 15, 1966, a Mr. Ralph McGee (business representative for petitioner) visited the above described construction site of Sharp Bros. and Royse and told the job superintendent there that the preglazed windows which were being installed at the site were manufactured by Cupples, a corporation which Mr. McGee claimed was paying its employees substandard wages. He stated further that he was "going to contact his attorney to see if there was any way he could advertise this fact to the public" (App. 34).

On May 12, 1966, Mr. McGee sent a letter to various unions which were members of the Building Trades Council of Kansas City, Missouri, stating that petitioner planned to picket the Sharp Bros. construction site because of its use of Cupples preglazed windows. The letter stated further that petitioner's purpose for such action was only "informational picketing" and requested the unions to "advise your members * * * not to refuse to cross such picket line or refuse to offer their service to their respective employers by reason of such picketing" (App. 28). Subsequently, four days later on May 16, 1966, a picket appeared at the jobsite.[3] The picketing continued until

---

1. Section 8(b) (4) (i) and (ii) (B), codified as 29 U.S.C. § 158(b) (4) (i) and (ii) (B), provide in pertinent part:
    (b) It shall be an unfair labor practice for a labor organization or its agents—

    (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce * * * to engage in * * * a strike * * * or (ii) to threaten, coerce, or restrain any person engaged in commerce * * * where * * * an object thereof is—
    (B) forcing or requiring any person to cease using, selling * * * or otherwise dealing in the products of any other producer * * *

2. 29 U.S.C. § 151, *et seq.* (1964).

3. The picket carried a sign which read:
    NOTICE TO THE PUBLIC
    FOR INFORMATIONAL PURPOSES
    ONLY
    The Windows Being Installed on This Project Are Glazed By Cupples Product [sic] Corp. Whose Employees Are Receiving Sub-Standard Wages & Conditions Being Paid By the Glazing Industry In This Area
    . . . . . . . . . .Please Do Not Buy. . . . . . . . . .
    Cupples Products Corp. Glazed Windows
    Help Us Maintain Our Wages & Working Conditions In This Area
    Glaziers and Glassworkers LU NO. 558

finally, on May 19th, a work stoppage occurred.[4] Petitioner's business agent was not informed of a work stoppage until May 20th (at which time a second work stoppage occurred) and at that time ordered the picketing to cease. On May 27, 1966, however, petitioner reinstituted the picketing and a third work stoppage occurred. Petitioner again stopped the picketing but reinstituted it on June 1, 1966, and caused a fourth work stoppage. On June 2, 1966, the picket appeared once more and a fifth work stoppage occurred. The Builders Association, previously referred to, filed charges of unfair labor practice against petitioner and on this basis a "complaint and notice of hearing" (App. 15–19) was issued against the union by the Board (through the Regional Director for Region 17) on August 30, 1966. On September 29, 1966, the Board and the petitioner entered into a stipulation which contained the testimony of all witnesses which either side deemed pertinent to the dispute. Subsequently, the parties agreed to waive a hearing before a trial examiner and to submit the stipulation, charge, and complaint directly to the Board for a decision and order. In addition, the General Counsel submitted a brief to the Board. As previously stated the Board's decision, *supra,* found that petitioner had indeed violated the Act. Petitioner did not file a petition for reconsideration of this decision as permitted by 29 C.F.R. § 102.48(d) (1968), but instead filed suit in this court pursuant

to Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f) (1964). The Board has filed a cross-petition for enforcement of its order under Section 10(e) of the Act, 29 U.S.C. § 160(e) (1964).

I

Petitioner asserts a two-pronged argument for reversal. The Union claims that the Board based its decision on a crucial finding of fact which was erroneous. Secondly, it argues that as a matter of law its picketing is not prohibited by the Act. It is our conclusion that, upon inspection and evaluation of the entire record, the Board's decision was supported by substantial evidence.

The finding of fact to which petitioner devotes a large portion of its brief is the Board's finding that the initial work stoppage occurred on May 20th (App. 35 note 1). After a thorough review of the record we find that there is uncontradicted testimony of three persons that the first work stoppage occurred on the afternoon of the 19th (Mr. Donald Sharp, Mr. Donell James, and Mr. Michael Royse, App. 8–9).[5] In fact, there is no *direct* testimony in the record that the first work stoppage occurred on the 20th.[6] The record also lacks any testimony refuting or contradicting the aforementioned testimony regarding May 19th. In addition, the Board in its decision made no "credibility finding" to

The union utilized only a single picket, but also passed out handbills to the employees on which was printed a statement urging employees not to walk off the job since the picketing taking place was solely to inform the public of Cripples' treatment of its employees.

4. The Board erroneously found that the first work stoppage occurred on May 20th, *see* part I, *infra.*

5. The testimony of these three men is definite and unequivocal as to the date and time of the first walkout. There seems to be no reason for fabrication on their part and since their testimony is neither disputed nor contradicted we find that the Board erred in not accepting it.

6. The only testimony in the record which would indicate that the first work stoppage was on the 20th is as follows: Mr. McGee would have testified that "he had no knowledge of any work stoppage on May 19, 1966. * * *" Mr. Schoonover would testify that "the first time he recalled a work stoppage (date unknown), McGee shortly afterwards appeared on the job site. * * *" Mr. McGee did not appear after a work stoppage until May 20th. From this the Board concluded that the first work stoppage occurred on the 20th. We feel this version of the facts is not supported by substantial evidence and hence must be disregarded as hereinafter provided in this opinion (App. 9–11).

resolve any ambiguity existing from the conflicting testimony. Accordingly, we find that this particular factual finding of the Board is not supported by substantial evidence in the record and it therefore must be disregarded.

■ We are not convinced, however, that because this single factual determination is not correct the entire decision of the Board is thereby invalidated. It is well settled that the Board's decision must be evaluated by our court on the basis of the totality of the circumstances involved as reflected in the entire record below. NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); Joy Silk Mills, Inc. v. NLRB, 87 U.S.App.D.C. 360, 185 F.2d 732 (1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951); American Trucking Ass'ns v. FCC, 126 U.S.App.D.C. 236, 377 F.2d 121 (1966), cert. denied, 386 U.S. 943, 87 S.Ct. 973, 17 L.Ed.2d 874 (1967).

The Board found that a salient factor bearing upon petitioner's intent to cause a work stoppage was the union's returning its picket to the job site in three separate instances despite the fact that its prior presence had caused a work stoppage. The Board made this clear by stating that (App. 36)

> [w]hile Respondent's business agent, having been informed on May 20 of the refusal to cross the picket line, did order picketing to cease on that day and ostensibly requested the employees to return to work, *he nevertheless resumed the picketing on May 27 * * ** (emphasis supplied).

By this action the Board found that the Union intended to and did cause at least four distinct work stoppages (App. 35). There is no doubt from the record and from the oral argument that on May 20th, May 27th, June 1st, and June 2nd, when the picket arrived several of the construction employees either refused to cross the picket line or walked off the job. Whether the employees also walked off the job at 2:30 p. m. on the 19th is not crucial to the disposition of this case. We feel that it makes little difference whether appellant caused four or six work stoppages.[7] In other words, although the Board found that the union changed the arrival time of the picket on the 20th (because it found that on prior days no work stoppages occurred), this in no way alters the basic overriding fact that the work stoppages were *caused* by the presence of the picket.

The Board also bases its decision with regard to petitioner's "intent" on the continuing dispute this union had with Cupples. The Board points to two other cases in which this very union (or a sister branch) was involved in the same activity against the same corporation (Cupples) with the same result. *See* Glaziers' Local Union No. 513, affiliated with Brotherhood of Painters, Decorators and Paperhangers of America, AFL–CIO, 148 N.L.R.B. 1648 (1964); Glaziers' Local Union No. 513, affiliated with Brotherhood of Painters, Decorators and Paperhangers of America, AFL–CIO, 158 N.L.R.B. 1621 (1966).[8] In fact, the Board stated that (Board's Decision at 5)

> [i]t is clear from the record in the instant case that the Respondent herein was picketing for the same purpose as did its sister local in the earlier cases,

7. The stipulation reveals that there is no dispute that work stoppages occurred on May 20th, May 27th, June 1, and June 2. In addition, the record shows that a work stoppage did occur on the 19th. There is testimony by Mr. Sharp (App. 8) that a work stoppage also occurred on May 31st. The petitioner adopts this view but the Board makes no mention of this work stoppage in its decision. We simply feel that this ambiguity is not crucial to the Board's decision that petitioner picketed with the intention of causing a work stoppage and in fact succeeded.

8. These two Board decisions will be referred to hereinafter as *Cupples I* and *Cupples II*, respectively. It is of significance also that the union has unsuccessfully tried to organize Cupples employees at various times since 1963 without success (*see Cupples II* at 1623).

i. e., appealing to neutral employees with an object of causing them to refuse to continue working. * * *

■ The factual framework of these other two cases is nearly identical to this case. The only differences are that the picket signs in *Cupples I* did not have Cupples' name on them, in *Cupples II* the windows were not yet on the job site picketed, and that the union in *Cupples II* did not promptly ask the unions to keep their members working. We feel these differences are inconsequential and that this case falls squarely under the same logic that governed these prior cases. Thus, it seems certain to us that the Board did not "carelessly construct[ed] a syllogistic pyramid" (Brief for Petitioner at 19) using this sole finding of fact as its base. Rather, it based its decision upon the totality of the circumstances involved. When the record is viewed as a whole we find that the Board's decision is clearly supported by substantial evidence.

■ We turn now to petitioner's contention that as a matter of law it was engaged in lawful consumer picketing. This contention must be rejected also. The authority relied upon by petitioner for this proposition is NLRB v. Fruit and Vegetable Packers, etc., 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964). In that case the Supreme Court held valid the secondary picketing of forty-six Safeway stores. There, however, the product (Washington State apples) was being sold to consumers on the premises and the picketing was to urge the consumers entering those premises not to buy that particular product. In this action, however, the picketed product was not being sold on the premises nor do we consider it likely that any potential buyers of preglazed windows would come to a construction site to inspect the windows for a potential purchase.[9] We find, therefore, that *Fruit Packers* is not dispositive of this action and that petitioners were not merely conducting lawful secondary picketing.[10]

## II

Appellee contends that the appellant waived its right to assert error based upon the Board's finding of fact because it failed to file a timely petition for reconsideration as permitted by 29 C.F.R. § 102.48(d) (1968). This rule provides that any material error in the Board's decision may be asserted through a motion for "reconsideration, rehearing, or reopening of the record." *Ibid.* The Board continues its argument by urging that failure to file such a motion bars appellant from asserting that factual error here on appeal. The Board relies upon Section 10(e) of the National Labor Relations Act (29 U.S.C. § 160(e) (1964)) which states in pertinent part:

No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. * * *

■ Coupled with this section of the Act and the Board's Rules is a unique procedural factor which exists here. As heretofore mentioned, the union waived its right to a hearing before a hearing examiner and agreed to have its case decided directly by the Board itself upon the basis of the stipulated record and any brief either side wished to file in support of its position. The General Counsel filed a brief but the union chose not to do so. The decision was rendered, the time for filing a petition for reconsideration elapsed, and now on appeal the union argues that a "crucial" factual finding was incorrect. We feel the un-

---

9. Petitioner makes absolutely no allegation as to how or in what manner the public could respond to the appeal that the union was allegedly directing to it. The Cupples plant was not picketed nor were its delivery trucks. We feel that it is significant also that petitioner chose the employee entrance-exit driveway across which to place its picket.

10. Since we agree with the Board that petitioner *intended* to cause a work stoppage we do not reach the question of whether secondary picketing of a non-consumer premises is illegal *per se.*

ion is not only grasping at "a straw in the wind" but it is doing so without the proper procedural foundation. In addition to our finding that petitioner's argument is without merit, we find also that since it did not bring this factual misconstruction to the Board's attention through a petition for rehearing it cannot assert it here on appeal. This court has held very plainly that

> [s]ince no effort was made by way of petition for rehearing * * * this issue may not be considered by this court on petition for review. * * *[11]

Although this question has not been dealt with by the courts in crystal clear terms, we feel that the weight of authority follows the view stated above.[12]

█ Petitioner cites no authority to contravene this contention; rather, the union claims that it urged this argument before the Board and therefore need not redundantly repeat its claim in a motion for reconsideration. We do not agree with petitioner that it presented this issue to the Board, but our holding on this question is restricted to these particular circumstances. We feel, therefore, that although petitioner did submit the "stipulation" to the Board containing testimony regarding the May 19th work stoppage, it should have filed a petition for reconsideration pointing out to the Board (1) the factual error in its opinion and (2) petitioner's argument that this factual finding was "crucial" to the decision. This would have provided an opportunity for the Board itself to determine (1) whether it made a factual error or (2) whether such error was vital to its disposition of the case. On the exceptional facts of this case, we feel that

orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. * * *[13]

In addition, we feel it is significant that it is a factual error, easily correctable by the Board, and not a legal error of which the union complains. Petitioner did not choose to point out this factual error complained of on the administrative level and we hold they cannot now raise it for the first time on appeal.

We conclude that the Board's factual error was not crucial to its decision and that the union failed to channel its objection through the proper administrative procedure. The Board's decision and order therefore must be

Affirmed and enforced.

McGOWAN, Circuit Judge (concurring separately):

I share the view of my colleagues that (1) the petitioning union is not entitled to a reversal of the Board's action as a matter of law by virtue of NLRB v. Fruit and Vegetable Packers, etc., 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964), and (2) the Board erred in finding that the first work stoppage occurred on May 20 rather than on May 19. Because the Board itself appeared to attribute some significance to this erroneous finding, I would normally have felt that a remand to the Board would have been necessary. It is not our function to speculate as to how the Board would have decided the case absent the mistaken factual assumption. It might well, as my colleagues conclude, have come out the same way in this instance, but that is

---

11. Gearhart & Otis, Inc. v. SEC, 121 U.S.App.D.C. 186, 189, 348 F.2d 798, 801 (1965).

12. United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952); Gearhart & Otis, Inc. v. SEC, *supra* note 11; Democrat Printing Co. v. FCC, 91 U.S.App.D.C. 72, 202 F.2d 298 (1952); NLRB v. Cheney California Lumber Co., 327 U.S. 385, 66 S. Ct. 553, 90 L.Ed. 739 (1946); Braniff Airways, Inc. v. CAB, 126 U.S.App.D.C.

399, 379 F.2d 453, 467 (1967); 3 K. DAVIS, ADMINISTRATIVE LAW § 20.06, 20.08 (1958).

13. United States v. Tucker Truck Lines, Inc., *supra* note 12, at 37. When making this statement the Supreme Court made specific reference to Section 10(e) of the National Labor Relations Act as an example of Congressional intent that objections be made at the administrative level.

for the Board to say, especially in a case where the Board has in terms made something of the mistaken fact in reporting its initial conclusion.

But the hearing of this appeal eventuating in relief of this kind might have been wholly unnecessary if the union had sought reconsideration, as it was entitled to do, pointing out to the Board the error it had made rather than waiting to raise the matter here for the first time. This is not to say that a petitioner for judicial relief must invariably first seek reconsideration at the Board level. It is to emphasize that this particular petitioner agreed to waive a hearing and to submit the case directly to the Board on a stipulation of facts and with the opportunity to file a brief articulating what that stipulation showed. The General Counsel availed himself of that opportunity. The union did not. When the latter thereafter thought to detect in the Board's opinion a mistaken reading of the stipulation, every consideration of policy affecting conservation and the improving use of the Board's time and of ours argued for prior resort to the Board.