**In re George R. EVANEGA and Winfried Albert, Appellants.**

No. 86–1667.

United States Court of Appeals, Federal Circuit.

Sept. 21, 1987.

Peter F. Felfe, Felfe & Lynch, New York City, argued, for appellants.

Harris A. Pitlick, Associate Sol., Office of the Sol., Arlington, Va., argued, for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before BISSELL, Circuit Judge, BALDWIN, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

George R. Evanega and Winfried Albert (Evanega) appeal the affirmance by the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board) of a patent examiner's rejection under 35 U.S.C. § 103 (1982 & Supp. 1985) of all eight claims of their application for a patent on a Method for Enzyme Immuno-Determinations in Heterogenous Phase.[1] We reverse.

## BACKGROUND

The claimed invention is an improvement in competitive immunoassays used to determine the amount of a specific binding protein in a sample. Such assays are used, for example, to determine the amount of a specific antibody in a blood sample. In general, an immunoassay requires the addition to the sample of a known amount of the antibody which has been labeled with a detectable enzyme or radioactive substance. The sample is then added to a solution containing antigens to which the labeled and unlabeled antibodies will competitively attach in proportion to their original respective quantities in the mixture. The antigens are attached to very small particulate matter (often tiny plastic balls) and, after time is allowed for the antibodies to attach, these particles are removed from the liquid by either straining or centrifuging to separate them from the liquid mixture containing the unattached antibodies. The final step is to test the solid (or the liquid) to determine the percentage concentration of the known, labeled antibody. This figure can then be used to calculate the amount of the antibody originally contained in the sample.

The invention claimed in claim 1 of the application is for an improvement in the measurement step which allows measurement of the labeled antibodies remaining in the solution without requiring isolation of the liquid phase from the solid phase.[2] In practice, this means that the measurement can be made by centrifuging the mixture and determining the liquid phase enzyme activity while there is still interphase contact between the solid and liquid phases.

The only prior art references cited by the PTO, Schuurs, et al. (U.S. Pat. 3,654,090) and Litman, et al. (U.S. Pat. 4,299,916), describe variations of the assay methods. Schuurs teaches that enzymes can be used instead of radioactive particles as the labeling material. Litman teaches one method for conducting the measurement step without physical separation of the liquid and solid phases, but it requires a second labeling enzyme for a "signal-producing system" to ensure that only the labeled antibodies attached to antigens will be measured.

---

1. The board, Evanega, and the Commissioner have proceeded on the basis that the patentability of dependent claims 2–8 solely depends on that of claim 1. We therefore address only the rejection of claim 1.

2. Claim 1 reads:
   1. In a method for the determination of a component of the reaction between a specific binding protein and a substance bindable therewith by incubating a sample solution with a determined amount of binding component in insoluble form in the presence of a reagent containing a known amount of one of the binding components in enzyme-labeled form and determining the activity of the enzyme remaining in the liquid phase, the improvement comprising:
      separating the liquid phase from the solid phase by centrifuging, and
      determining the activity of the enzyme remaining in the liquid phase in a centrifuge rotor during or after said separation of liquid or solid phase by centrifuging whereby the solid phase and the liquid phase are still in contact with one another.

In affirming the rejection, the board relied on the fourth of five examples in the specification of Schuurs, in which Schuurs describes the centrifuging of an antigen/sample mixture, and then the measurement of the "supernatant fluid." The board held:

> Since a supernatent [sic] liquor is "the liquid standing above a precipitate or sediment [citation omitted]", and since, unlike the description in example 1, the patentee does *not* state that the insolubilized fraction was removed, it is reasonable to conclude that the enzyme activity is measured in the liquid phase while it is in contact with the sediment. Such disclosure, we are convinced, would have at least rendered the present claims *prima facie* obvious. Since no countervailing evidence has been offered to rebut the strong inference of obviousness established by the reference showing, the examiner's rejection must necessarily be sustained.

Evanega argues that the board erred in reaching this conclusion because, when read in context with the other examples, the most reasonable reading of Schuurs' description is that example 4 merely omitted a repetitive recitation of the removal step. Evanega also asserts that the board erred in failing to find that both references teach that the liquid and solid phases must either be physically removed from contact with the other before the measurements are made or that additional steps must be taken to achieve accurate measurement if the two phases remain in contact.

## OPINION

### I.

The pertinent language in the five examples of Schuurs reads as follows:

Ex. 1   After rotating for another 15 minutes ... the insolubilized antibody was *removed by centrifugation....*

Ex. 2   *Centrifuging* for 10 minutes ... *yielded a clear supernatant,* of which the enzyme activity was assayed.

Ex. 3   the insolubilized antigen was *removed by centrifugation* ... and the enzyme in the supernatant fluid assayed.

Ex. 4   the reaction mixture ... [was] centrifuged for 5 minutes ... [and the] glucose-oxidase activity in the supernatant fluid was measured.

Ex. 5   *Centrifugation* ... fluid, whose enzyme activity was assayed.

(Emphasis added.)

■ When read together and in context, these descriptions in the specification of Schuurs contemplate the physical isolation of the phases before the measurement of the enzyme activity. Examples 1 and 3 clearly speak of removing the supernatant fluid. No example suggests or describes taking measurements while the phases are still in contact. The mere absence of an explicit requirement of isolation of the phases in example 4 cannot reasonably be construed as an affirmative statement that the phases need not be isolated. Instead, the entirety of Schuurs suggests that the phases must be physically isolated. *See Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1568, 1 USPQ2d 1593, 1597, *cert. denied,* —— U.S. ——, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987) (in determining obviousness, a prior patent must be considered in its entirety). Thus, we conclude that the board erred in determining that Schuurs established a prima facie case.

### II.

■ While the examiner rejected Evanega's application on the basis of Schuurs in view of Litman, the board's affirmance of the rejection was based on Schuurs, with only a discussion of the Litman reference. The Commissioner does not argue the merits, but only that Evanega's failure to appeal the examiner's ground of rejection constitutes a waiver and requires us to affirm the result of the board's decision, if not its rationale. We disagree with the Commissioner that Evanega has failed to respond to the examiner's rejection since Evanega has vigorously contended that neither reference discloses taking measurements while the two phases are still in contact, at least not without the extra measures taught by Litman. Its argument

that each reference individually teaches separation is a sufficient basis for inferring that they also do so when combined, absent the Litman extra measures. These contentions, thus, are adequate as a response and challenge on appeal to the examiner's basis for rejection. *See In re Sichert*, 566 F.2d 1154, 1164, 196 USPQ 209, 217 (CCPA 1977); *In re Castner*, 518 F.2d 1234, 1238, 186 USPQ 213, 217 (CCPA 1975).

### III.

■ Finally, the Commissioner takes the position that because the board relied solely on Schuurs, which was a new ground for rejection, and because Evanega did not request reconsideration of that ground by the board, Evanega should not be permitted to contest the board's rejection on appeal. The contention is that the board has not had the opportunity to consider Evanega's arguments on this issue, and the Commissioner urges that we remand to the board for this purpose. A similar argument was made and rejected in *In re Nielson*, 816 F.2d 1567, 1570, 2 USPQ2d 1525, 1527 (Fed. Cir.1987). There is likewise no merit in the Commissioner's position in this case.

The Commissioner cites *International Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 975 n. 3, 43 L.Ed.2d 189 (1975); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); and *Glaziers' Local No. 558 v. National Labor Relations Board*, 408 F.2d 197, 202–03 (D.C.Cir.1969). We find these cases to be inapposite where, as here, the regulations expressly provide that the board's decision, even if based on a new ground, is a final determination and thus may be appealed without seeking reconsideration. See 37 C.F.R. § 1.196(b)(3); 28 U.S.C. § 1295(a)(4)(A) (1982).

Two of the cited cases, *Ladies' Garment Workers'* and *Glaziers'*, are distinguishable on the basis that 29 U.S.C. § 160(e) (1964) expressly provided that an objection not urged before the NLRB cannot be asserted on appeal "unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

*Ladies' Garment Workers'*, 420 U.S. at 281, n. 3, 95 S.Ct. at 975, n. 3; *see Glaziers'*, 408 F.2d at 203, n. 13. In this case, there is no equivalent of section 160(e).

The *Tucker* case involved an alleged procedural irregularity. Specifically, it was argued that the Administrative Procedure Act's requirements as to the selection of the hearing examiner had not been followed, a matter which was not challenged at the administrative hearing. The Supreme Court ruled that appellant's failure to raise the objection until a subsequent hearing before the district court constituted a waiver because the appellant's action precluded the board from having an opportunity to consider the alleged procedural deficiency. *Tucker*, 344 U.S. at 37, 73 S.Ct. at 69. Significantly, the new ground for rejection in the instant case was not merely a procedural defect but was the substantive basis for the decision. The issue was raised, *sua sponte*, by the board, so that it cannot be said that the board did not have a chance to consider it.

The regulatory scheme of the PTO is admitted by the Commissioner to specifically authorize an appellant, who is dissatisfied with a board decision, to "appeal directly ... *without first requesting reconsideration*" (emphasis added). In fact, the Commissioner concedes that Evanega did not seek reconsideration "as was [its] right." See 37 C.F.R. § 1.196(b)(3) ("[t]he appellant may treat the decision, *including the new grounds for rejection* ..., as a final decision in the case." (Emphasis added.))

Given the PTO's regulations and the inapplicability of the cases cited by the Commissioner, we reject the contention that an applicant whose application is rejected by the board on a new ground must seek reconsideration and present its arguments to the board before appealing that rejection to this court. *In re Nielson*, 816 F.2d at 1571, 2 USPQ2d at 1527.

REVERSED.