950 F.2d 732
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Werner SCHAUB.
 No. 91-1323.
 United States Court of Appeals, Federal Circuit.
 Nov. 27, 1991.
 
 Before ARCHER, Circuit Judge, BENNETT, Senior Circuit Judge, and MICHEL, Circuit Judge.
 DECISION
 ARCHER, Circuit Judge.
 
 
 1
 Werner Schaub appeals the decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board), No. 90-0838, affirming the rejection of claims 1-32, being all the claims of application serial number 07/187,980, as unpatentable under 35 U.S.C. § 103. We reverse.
 
 DISCUSSION
 
 2
 This court reviews de novo a determination of obviousness by the board, In re De Blauwe, 736 F.2d 699, 703, 222 USPQ 191, 195 (Fed.Cir.1984), but reviews the board's underlying factual findings under the clearly erroneous standard, In re Caveney, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).
 
 
 3
 Schaub's invention relates to an animal feed and a method of supplying a fat-containing feed to animals. The board sustained the rejection of claim 1 under 35 U.S.C. § 103 as obvious over U.S. Patent No. 3,011,892 to Rosenberg in view of any one of five secondary references.[1] Additionally, the board affirmed the rejection of claim 13 under section 103 in view of U.S. Patent No. 3,892,880 to Grolitsch.[2] Because the patentability of the claims was not argued separately before the board, dependent claims 2-32 stand or fall with the patentability of claim 1 and dependent claims 14-27 stand or fall with the patentability of claim 13. In re Nielson, 816 F.2d 1567, 1572, 2 USPQ2d 1525, 1528 (Fed.Cir.1987); 37 C.F.R. § 1.192(c)(5).
 
 
 4
 The Rosenberg patent teaches the use of fat particles in animal feed. The fat particles contain a blend of high-melting point fat and non-hydrogenated liquid oil and are 2 mm or less in size. Rosenberg is silent as to the use of emulsifiers. The board found that Rosenberg taught all that Schaub claimed except the particle size. For this teaching, the board cited the five secondary references which taught a fat particle size as claimed.
 
 
 5
 In sustaining the rejection over Rosenberg, the board reasoned that claim 1 does not preclude the presence of a non-hydrogenated liquid oil as required by the reference. This rationale ignores step b of claim 1 which requires that all the fat present must either have a melting point above the animal's body temperature or be hydrogenated to raise the melting point to be above the animal's body temperature. Because Rosenberg does not teach or suggest this claim limitation, we conclude that the board erred in determining that a prima facie case of obviousness was established.
 
 
 6
 Since Rosenberg fails to teach or suggest all hard or hardened fat as required by step b of claim 1, and it cannot be relied upon to support an obviousness rejection, we need not reach Schaub's arguments regarding fat particle size or the absence of an emulsifier.
 
 
 7
 The Grolitsch patent discloses a process for the manufacture of flowable, stable fat powders having a particle size of about 10 to 50 um by spraying melted fat into a cold air stream. The fat and fat blends described in the reference may be used in combination with an emulsifier and are suitable for use in edible products such as milk substitutes and powdered shortenings.
 
 
 8
 The board clearly erred in concluding that, because Grolitsch states that it is "possible" to add emulsifiers to fat powders, the reference also meets the claim limitation requiring an absence of emulsifiers. Such a conclusion is not based on a fair reading of the reference as a whole. Grolitsch adds an emulsifier in four of its five examples. No emulsifier is required in the fifth example because the milk fat utilized in that example exists naturally as an oil-in-water emulsion. The mere statement that an emulsifier may be used, when all of the examples describe fat particles that form an emulsion, cannot be construed as an affirmative statement that emulsifiers should not be present. See In re Evanega, 829 F.2d 1110, 1112, 4 USPQ2d 1249, 1251 (Fed.Cir.1987).
 
 
 9
 Further, while Grolitsch discloses a hydrogenated fat solid at about 20? C, or room temperature, claim 13 requires a fat solid at the body temperature of the ruminant to be fed. Schaub's specification discloses hydrogenating fats or oils to raise their melting point above the body temperature of the ruminant to be fed, or to about 45? C to 70? C. The board's conclusion that Grolitsch makes obvious the invention encompassed by claim 13 is therefore erroneous. Grolitsch makes no mention of animals, much less the body temperature of ruminants, and the board has not delineated any motivation or suggestion that would lead one of ordinary skill in the art to hydrogenate liquid oil to a melting point above the body temperature of a ruminant instead of the melting point of about 20? C which the reference teaches.
 
 
 
 [1]
 Although the Solicitor argued that the disclosure in either of two of the secondary references, Swiss Patent No. 456,010 or Lang et al., "Les Corps Gras En Poudre: Preparation, Properties, Utilisations," Revue Francaise des Corps Gras, No. 6, 327-35 (1975), was sufficient to render the claims unpatentable, we do not consider those arguments because they were raised for the first time on appeal. But see MPEP 1216.01(4)
 
 
 [2]
 Claims 1 and 13 read:
 
 
 [1]
 A method of supplying a fat containing ration to animals, including ruminants and other farm animals, comprising the steps of:
 a) selecting at least one available fat having nutritional value to the animal to be fed, said fat being selected from the group consisting of fats having a melting point higher than the body temperature of the animal to be fed, fats having a melting point lower than the body temperature of the animal to be fed, and mixtures thereof;
 b) hydrogenating any fat selected in step a) which has a melting point lower than the body temperature of the animal to be fed to raise the melting point of the hydrogenated fat above the body temperature of the animal to be fed;
 c) forming, essentially without emulsifiers, a powder of fat particles having a maximum size of about 50 [microns] exclusively from fat having a melting point higher than the body temperature of the animal to be fed, said fat having been selected in step a) and including any fat hydrogenated in step b); and
 d) feeding said powder of fat particles in dry form, essentially without any emulsifier, to an animal.
 
 
 [13]
 An animal feed for ruminants containing more than about 5% fat in the form of particles having a size smaller than 50 [microns], said fat having a melting point above the body temperature of the ruminants to be fed, the feed being essentially free of emulsifying agents