3/11/02

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 13
ejs

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

In re Trans Continental Records, Inc.

_____

Serial No. 75/628,844

_____

Howard N. Aronson & Seana F. C. LaPlace of Lackenbach
Siegel Marzullo Aronson & Greenspan, P.C. for Trans
Continental Records, Inc.

Susan Kastriner Lawrence, Trademark Examining Attorney, Law
Office 116 (Meryl L. Hershkowitz, Managing Attorney)

_____

Before Simms, Cissel and Seeherman, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Trans Continental Records, Inc. seeks registration on
the Principal Register of the mark O-TOWN RECORDS
INCORPORATED and design, as shown below, with the words
RECORDS and INCORPORATED disclaimed, for "pre-recorded
compact discs, audio cassettes, and video cassettes
featuring pop music; jewelry; paper goods and printed
matter, namely, posters, bookcovers, postcards and

unmounted photographs; leather goods, namely, backpacks and fanny packs; clothing, namely, hats, t-shirts and jackets; and entertainment in the nature of live performances by a pop musical group."[1]



The Examining Attorney has made final a requirement that applicant disclaim exclusive rights to the name O-TOWN on the ground that this term is geographically descriptive of the identified goods and services.

Applicant has appealed. Applicant and the Examining Attorney have filed briefs,[2] but an oral hearing was not requested.

---

[1] Application Serial No. 75/628,844, filed January 27, 1999, and asserting a bona fide intention to use the mark in commerce.

[2] With its brief applicant has submitted exhibits taken from various web search engines. The Examining Attorney has objected to this material because it was not made of record during the prosecution of the application. Trademark Rule 2.142(d) provides, in part, that the record in the application should be complete prior to the filing of the appeal. Because the exhibits were not made of record prior to the filing of the appeal, they have not been considered.

Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), provides, in relevant part, that the Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable.  Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2), prohibits the registration of marks which, when used on or in connection with the goods of the applicant, are primarily geographically descriptive of them.

A mark is considered to be primarily geographically descriptive if (1) it is the name of a place and this place is known generally to the public, and (2) the public would make a goods/place association, that is, believe that the goods or services for which the mark is sought to be registered originate in that place.  See **In re Urbano**, 51 USPQ2d 1776 (TTAB 1999); **In re California Pizza Kitchen, Inc.**, 10 USPQ2d 1704 (TTAB 1988).  Where there is no genuine issue that the geographical significance of a term is its primary significance and where the geographical place is neither obscure nor remote, a public association of the goods with the place may ordinarily be presumed from the fact that the applicant's own goods come from the geographical place named in the mark.  **In re Harvey & Sons Ltd.**, 32 USPQ2d 1451 (TTAB 1994); **In re Handler Fenton Westerns, Inc.**, 214 USPQ 848 (TTAB 1982).

It is the Examining Attorney's position that O-TOWN is geographically descriptive of the identified goods and services because it is a nickname for the city of Orlando, Florida. Because applicant is located in Orlando, a goods/place association between applicant's goods and services and Orlando may be presumed.

In support of the refusal, the Examining Attorney has submitted a number of articles taken from the NEXIS data base. Because applicant contends that O-TOWN is a remote and obscure term, we will examine this evidence in some detail.

With the first Office action the Examining Attorney indicated that she had searched for stories in which the term O TOWN appeared within 10 words of ORLANDO. Seventy-three stories were found with this criteria, and the Examining Attorney printed fourteen. Of these, nine were from the "Orlando Sentinel," and three were from other Florida newspapers. The remaining two articles were from the "Washington Post" and the "Washington Times" and appear to refer to applicant (Lou Pearlman is one of applicant's principals):

> Amazed at their [New Kids on the Block] earning power, Pearlman envisioned an Orlando-based company to rival Motown— hence, O-town.

4

> Then again, O-town's raw material is vastly different from what Berry Gordy found in the black working-class neighborhoods of Detroit.
> "Washington Post," March 19, 1999
>
> 'N Sync is part of a growing teen-pop empire based in Orlando, Fla., which is being called O-Town (a riff on Motown, according to executives). O-Town has the knack for producing hit groups (such as the popular Backstreet Boys), but 'N Sync has exceeded expectations.
> "Washington Times," March 18, 1999

With the final Office action the Examining Attorney did a search for stories in which O TOWN and either FLORIDA or ORLANDO appeared. This search produced 441 "hits," and the Examining Attorney submitted ten of them.

Two of these stories were also from the "Orlando Sentinel." Of the others, three do not appear to refer to the city of Orlando at all:

> "Rocko's Modern Life: Rocko's Modern Christmas" –Rocko plans a Christmas party and invites his new neighbors, the Elves. Bad rumors spread around O-Town about the Elves, and no one shows up at Rocko's party. [synopsis of TV show]
> "News & Record" (Greensboro, NC), November 25, 1995
>
> The O Town Blades of Cincinnati took first place in the 16-and-older five-on-five division at the Columbus Triple Crown Street Hockey tournament last weekend.
> "The Cincinnati Enquirer," June 30, 1995

> Rising on the charts as they go, the
> Lakers' Studs played on before a packed
> house at Veterans Memorial Coliseum,
> with the heavy dose of that O-town
> sound.
> That, of course, would be Orlando
> Woolridge who, after a season of having
> his roster spot questioned, has become
> number zero with a bullet for the
> Lakers....
> "Los Angeles Times," May 29, 1989

Four of the articles are written about the Orlando Magic, and reference O-town as a nickname for the city of Orlando. For example:

> It helped mightily that the Magic hit
> the NBA draft jackpot in consecutive
> years, bringing the best young center,
> Shaquille O'Neal, and the best young
> point guard, Penny Hardaway, to O-town.
> "The Houston Chronicle," October 27,
> 1996

> "If we can get a win in Game 4, then do
> it on Friday," Scott dreamed, "then we
> won't lose if we get back to O-Town."
> "Daily News" (New York), June 13, 1995

One additional article in this search refers generally to Orlando as O-town:

> Look in the Yellow Pages under Sitting
> Services –and check out O-town's
> nightlife.
> "Atlanta Journal and Constitution,"
> December 29, 1993

The Examining Attorney also did a search for articles in which O TOWN appeared within five words of NICKNAME which in turn appeared within fifteen words of ORLANDO, and

found one reference, which indicates that O-TOWN is not only a nickname for the city of ORLANDO, but the name of a musical group developed by applicant's principal:

> He [Lou Pearlman] brings the finalist
> for further development to Orlando,
> from where the nickname of the city –
> O-Town—is used for the group's name.
> "Chicago Tribune," March 23, 2000

Finally, the Examining Attorney conducted a search for articles in which O TOWN appears within five words of MUSIC. This search retrieved 22 stories, of which the Examining Attorney submitted seven. Five of these were from the "Orlando Sentinel" or other Florida papers. Of the remaining two, one references O TOWN in connection with a type of music, and the other, while indicating that O-Town refers to Orlando, also indicates that it is the location for applicant's principal's business:

> With their rise, [boy singing groups]
> what used to be called "bubble-gum
> music" earned a new nickname—"The O-
> Town Sound."
> "Arizona Republic," December 12, 1999
>
> There's no denying the larger, star-
> making orchestrations. O-Town, short
> for Orlando, where Pearlman's music
> complex is based, has, in several
> months, made connections that musicians
> ....
> "The Record" (Bergen County, NJ)

Finally, the Examining Attorney submitted evidence obtained from two websites which mention "O-TOWN." One is

7

Ser No. 75/628,844

from the website of an Orlando newspaper, the "Orlando

Business Journal," while the other is from a website called

angelfire.com, and includes the following two pages:

> headline: o-town big-timers (for the
> obsessed Floridian fan)
> This page has to do everything and
> anything that 'N Sync has done (or
> doing) in their home of Orlando,
> Florida.
> ***
> headline: Rocking Rollin' With the O-
> Town Boys
> [large picture of Backstreet Boys]
> Hello & Welcome To All Backstreet Boys
> Fans!  This is my first ever homepage
> so please bear with me....
> www.angelfire.com

Based on this evidence, we find that O-TOWN is a

relatively obscure geographic reference for the city of

Orlando, Florida.  Although people in Orlando and parts of

Florida may be aware of the nickname, we cannot say, based

on the evidence of record, that consumers elsewhere in the

country are aware that O-TOWN is another name for the city

of Orlando.  Quite simply, the limited number of articles

reflecting that O-TOWN is a nickname for Orlando is not

sufficient for us to conclude that O-TOWN is anything but

an obscure geographic term.  As our principal reviewing

Court, in **In re Societe Generale des Eaux Minerales de

Vittel S.A.**, 824 F.2d 957, 3 USPQ2d 1450, 1451 (Fed. Cir.

1987), commented, "[i]t is indeed remarkable to see the

8

thoroughness with which NEXIS can regurgitate a placename casually mentioned in the news."  The same can be said of the NEXIS stories which are of record herein.  Similarly, the evidence from the single website which is not from an Orlando newspaper is not persuasive that O-TOWN is generally known as a geographic location.  There is no evidence as to whether this website has been accessed by a significant number of people.  And, in view of the amateurish nature of the text ("This is my first ever homepage so please bear with me"), we cannot regard the author's view of "O-TOWN" as a nickname for Orlando to be indicative of the perception of the public at large.

We are also concerned by the fact that in the NEXIS search for stories in which O TOWN appeared with the words FLORIDA or ORLANDO, a search which retrieved 441 articles, the Examining Attorney made of record story numbers 257, 303, 325, 330, 331, 337, 369, 411, 435 and 437.  Although the Examining Attorney described these articles as a "sample," we do not understand why the first article she chose to submit was number 257, and therefore we have difficulty regarding the ten articles as a representative sample.  This evidence certainly gives some credence to applicant's assertion that O-TOWN is recognized as the name of its band, and not of the city.

We consider this case to be similar to **ConAgra Inc. v. Saavedra**, 4 USPQ2d 1245 (TTAB 1987), which involved the question of whether TAPATIO, which is defined as a person or thing from Guadalajara, is primarily deceptively geographically misdescriptive for goods not originating in Guadalajara. The Board stated, at 4 USPQ2d 1249:

> while Guadalajara may be a large, well known city in Mexico, the question is how many people in the United States would know the geographical significance of "tapatio," that is, how many people would know it relates to persons or things Guadalajaran? We think the record in this case is inadequate to show that a significant portion of consumers purchasing meatless hot sauce would, upon seeing TAPATIO on a container of meatless hot sauce, conclude that it relates to a place name and that the product came from that place, rather than concluding that it is simply a trademark of a manufacturer engendering a Spanish connotation. ... We conclude, therefore, that since the geographical significance of the term "tapatio" is lost on the public because of obscurity, it is, in effect, an arbitrary designation....

In view of our finding that O-TOWN is a relatively obscure term which would not be perceived as a geographic reference to Orlando, the fact that the Examining Attorney has demonstrated a goods/place association between applicant's goods and services and the city of Orlando, Florida is of no moment.

10

Decision:  The requirement for a disclaimer of O-TOWN is reversed.