[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 10, 2007
THOMAS K. KAHN
CLERK

No. 06-12793

D. C. Docket No. 04-00049 CV-OC-10-GRJ

JOHN MAHON, et al,

Plaintiffs-Appellants,

versus

UNITED STATES DEPARTMENT
OF AGRICULTURE,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

**(May 10, 2007)**

Before DUBINA and COX, Circuit Judges, and SCHLESINGER,* District Judge.

SCHLESINGER, District Judge:

_____

*Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

The appellants, John, Shelby, and Paul Mahon, filed a complaint against the United States Department of Agriculture ("USDA") in the United States District Court for the Middle District of Florida. The complaint sought judicial review of final agency determinations in which the USDA had denied the appellants' applications for federal disaster assistance under 7 C.F.R. § 1480.20 (2002) for damage to container-grown crops (citrus trees) at the Mahons' nurseries located in Lake County, Florida. The damage was caused by freezing temperatures that occurred in November and December 2000.

As to John and Shelby Mahon, the complaint asserted that the USDA had (1) "failed to follow its own procedures" by not reviewing the Hearing Officer's determination within ten days, as required, (2) "misapplied" the applicable regulations, (3) "unlawful[ly] discriminat[ed]" against John and Shelby Mahon, and (4) deprived John and Shelby of their "due process rights."

With respect to Paul Mahon, the complaint asked the district court to reverse the final agency determination, in which the USDA had denied his request for an administrative appeal on grounds that the request was untimely, and to remand the matter to the USDA for an evidentiary hearing. The complaint asserted that the USDA had (1) erred in refusing to accept Paul Mahon's appeal for the reasons stated in the Agency's denial letter, (2) "misconstrued" the

2

applicable regulations, and (3) "deprived Paul Mahon of due process."

The parties stipulated that the district court would resolve the case based on the Mahons' motion for summary judgment, the USDA's response to that motion, and the district court's *de novo* review of the administrative records. The district court denied the Mahons' motion for summary judgment and entered summary judgment in favor of the USDA. In its order, the court concluded that as to John and Shelby Mahon's claims, the USDA's determination denying them benefits was not unreasonable nor contrary to law. With respect to Paul Mahon, the court concluded that it lacked jurisdiction because he had failed to exhaust his administrative remedies by failing to timely file an administrative appeal. This appeal followed.

For the reasons stated below, we vacate the district court's decision with respect to John and Shelby Mahons' claims and remand this case for further proceedings. With respect to Paul Mahon's claims, we affirm the decision of the district court.

## I. BACKGROUND

John and Shelby Mahon are owners of a citrus nursery located in Lake County, Florida. The nursery primarily produces citrus trees, however, it also produces other plants, including philodendron selloms and azaleas. The trees and

3

plants are grown in small containers and then sold. Their nursery is situated on approximately 126-acres, and a typical crop can consist of approximately 175,000 trees and plants. Paul Mahon is also the owner of a citrus nursery located in Lake County, Florida.[1] Like John and Shelby Mahon's nursery, his nursery primarily produces citrus trees. His nursery is situated on five acres of land, and his crops can consist of as many as 100,000 trees and plants. On several days between November 22 and December 31, the Mahons' citrus crops were destroyed as a result of freezing temperatures.

In January 2001, John, Shelby, and Paul Mahon filed applications for disaster assistance pursuant to the 2000 Crop Disaster Program, 7 C.F.R. Part 1480 (2002), a program established by the USDA. The Mahons requested approximately $1.45 million in benefits.

On May 25, 2001, the Lake County Committee of the Farm Service Agency ("FSA") denied Paul Mahon's application on the ground that he "d[id] not meet the eligibility criteria for a commercial nursery operation" because he had not renewed his certificate of registration to sell or distribute, or to offer for sale or distribution nursery stock under Florida law, § 581.131, Fla. Stat. (2000), and

---

[1]It is unclear from the record what the familial relationship is between John and Shelby Mahon and Paul Mahon.

4

because the State of Florida's records showed that he was "no longer in business." Paul Mahon filed a request for reconsideration, which was denied on November 9, 2001. The denial letter noted that in his request for reconsideration, Paul Mahon had submitted receipts that "reflect[] movement of inventory off of the property [when] he was not certified with the State of Florida."

On November 9, 2001, the Lake County Committee denied John and Shelby Mahon's applications on the ground that they "di[d] not meet the eligibility criteria for a commercial nursery operation" because, like Paul Mahon, their certificate of registration as commercial growers under Florida law had expired and because the State of Florida's records showed that they were "out of business." The denial letter noted that John and Shelby Mahon had submitted receipts which "reflect[ed] that the operation was moving inventory off of the location [when] they were not certified with the State of Florida." In addition, the County Committee concluded that the Plaintiffs did not follow "best management practices." John and Shelby Mahon also sought reconsideration, and their request was likewise denied.

## A. PAUL MAHON'S ADMINISTRATIVE APPEAL.

On December 5, 2001, following the denial of his benefits application, Paul Mahon elected to proceed to mediation. After mediation reached an impasse, Paul Mahon's attorney sent a letter purporting to be a notice of appeal on May 29,

5

2002,[2] and again on June 7, 2002.[3]

On June 13, 2002, Paul Mahon signed a written statement in which he authorized his attorney to appeal to the National Appeals Division ("NAD") and "confirmed" his attorney's June 7, 2002 request for appeal. Paul Mahon also signed a letter that forwarded the signed authorization to the NAD and asked the NAD to "consider [the signed authorization] to be [his] formal notice of appeal and request for oral argument." On June 14, Paul Mahon (or someone acting on his behalf) mailed the written appeal authorization and transmittal letter.

The NAD sent a letter to Paul Mahon's counsel denying the June 7, 2002, request for an appeal on the ground that, even after application of 7 C.F.R. § 11.5(c)(1) (2002) (stating that a request for mediation tolls the thirty-day period to appeal to the NAD), based on an impasse date of April 25, 2002, Paul Mahon "[had] not filed[d] a personally signed request for an appeal within the [thirty]day] time limit established by [7 C.F.R. § 11.6(b)(1)–(2) (2002).]."

On June 20, 2002, Paul Mahon objected to the denial of his appeal claiming that the NAD did not notify him that the mediation had reached an impasse until

---

[2]The letter was sent to the Lake County Committee. In the letter, Paul Mahon's attorney asked the Committee to consider the letter to be a notice of administrative appeal.

[3]This letter was sent to the National Appeals Division ("NAD"), and was substantively similar to the letter sent to the Lake County Committee.

May 25, 2002, and that there was never an agreement amongst the parties to have an impasse declared on April 25, 2002. Paul Mahon demanded "a rehearing and an evidentiary hearing as to when the impasse [had] occurred and to the lack of notice." To support his position, Paul Mahon pointed out that the Florida Agricultural Mediation Service, which conducted the mediation, did not consider the mediation to have reached an impasse until May 28, 2002.

The NAD nevertheless denied Paul Mahon's request for reconsideration on the ground that his personally signed notice of appeal, which was signed on June 13, 2002 and postmarked June 14, 2002, was untimely based on either impasse date. The NAD subsequently denied Paul Mahon's numerous motions for reconsideration.

B. JOHN AND SHELBY MAHON'S ADMINISTRATIVE APPEAL.

On June 13, 2002, John and Shelby Mahon timely signed and filed notices of administrative appeal with the NAD. A Hearing Officer conducted a hearing on November 16, 2002. During the hearing, the Officer received evidence that other nurseries in Lake County and elsewhere in Florida had received benefits even though they had not paid the commercial growers registration fees as required by Florida law and that the FSA had not asked those nurseries whether they were registered under Florida law. Although the FSA acknowledged that it erroneously

had issued some payments to ineligible applicants, the FSA argued that the applicable federal regulation, 7 C.F.R. § 718.9 (2002), prohibited the FSA from seeking a refund. The FSA also presented sworn testimony that the FSA had not been aware of the "status" of the unregistered recipients when it had approved their applications and that "once the problem was identified, [the] FSA began inquiring into licensure status of all applicants before paying benefits."

On December 4, 2002, the Hearing Officer issued an Appeal Determination in which he found that the Lake County Committee had erred in denying John Mahon's and Shelby Mahon's applications for disaster relief. The Hearing Officer concluded that the Agency's decision to deny disaster relief to John and Shelby Mahon because their state certificate of registration to sell nursery stock had expired, while granting relief to others whose certificates had likewise expired, was arbitrary and contrary to law. According to the Hearing Officer, the Agency "must provide assistance to all producers equally." In addition, the Hearing Officer found that "the [A]gency's use of Florida Statutes as one of the basis [sic] for denying [John and Shelby Mahon's Crop Disaster Program] benefits is not in accordance with the standards established by federal published regulations." In the alternative, the Hearing Officer noted that even if Florida's certification law was applicable, a USDA Official had already concluded in another case that under

8

Florida law a certification was not required until such time as the crop was ready to be sold.[4] Since the Agency failed to provide any evidence that the Mahon's crops were eligible for sale, they were not required to be registered as commercial producers pursuant to Florida law. Lastly, the Hearing Officer concluded that the Agency's determination that John and Shelby Mahon's management of the nursery did not meet the definition of "best management practices" was erroneous. On December 27, 2002, the FSA Acting Administrator filed a request for review of the Hearing Officer's December 4, 2002 Appeal Determination by the Director of the NAD.

On January 22, 2003, the Director issued a Director Review Determination, in which he reversed the Hearing Officer's ruling. The Director found that John and Shelby Mahon's request for disaster relief was appropriately denied because they had not employed "best management practices" as required by federal regulations. The Director declined to address "the issue of whether [John and Shelby Mahon's] missing state [certificate of registration] also supported [the] FSA's adverse decision."

---

[4]This conclusion of law was made by Marcinda Wolthuis, County Executive Director for the Lake-Orange Co. FSA, in a letter dated December 19, 2001, addressed to growers Aaron and Jamie Fender. The letter was sent in reference to a motion for reconsideration filed by the Fenders and in granting the motion Ms. Wolthuis stated: "No inventory had been sold in the 2001 year therefore certification with the State of Florida would not have been required until the crop was eligible for sale. Deeming that the certification was not required at the time of loss."

On February 7, 2003, John and Shelby Mahon requested reconsideration of the "Director's Review Determination." Thereafter, on August 15, 2003, the Deputy Director, who had been delegated authority to make determinations on requests for reconsideration, issued a Revised Director's Review Determination. The Deputy Director vacated the January 22, 2003, Director Review Determination based on a finding that it had been "based on a material fact that was in error." Specifically, the Deputy Director found the Director's conclusion that the Mahons had failed to employ "best management practices" was erroneous. The Deputy Director then conducted a *de novo* review of the matter, but nevertheless determined that the Lake County Committee's denial of benefits was "supported by the law and the evidence" and that the Hearing Officer's December 4, 2002, Appeal Determination, "must be reversed."

The Deputy Director found that the Agency properly denied disaster relief to John and Shelby Mahon because they were not operating as a commercial nursery at the time of their loss. The Deputy Director reasoned that "[d]isaster benefits are expressly limited by regulations to ornamental nursery crops that were grown in a container or controlled environment for commercial sale on property owned or leased by the producer," and since John and Shelby Mahon's nursery was not registered as a commercial nursery under Florida law, and since their

crops could not be legally sold under Florida law without being registered on the dates of their loss, disaster benefits were properly denied.

On September 9, 2003, John and Shelby Mahon filed their "Request for Reconsideration of the Director's Revised Review." Their request was denied on October 17, 2003.

## II. DISCUSSION

### A.

This court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004); *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). This court may affirm a district court's grant of summary judgment "on any ground fairly supported by the record." *Alliance Metals, Inc. v. Hinely Industries, Inc.*, 222 F.3d 895, 900 (11th Cir. 2000).

Summary Judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency. *Florida Fruit & Vegetable Ass'n v. Brock*, 771 F.2d 1455, 1459 (11th Cir. 1985); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2733 (3d ed. 1998). However, "even in the context of summary judgment, an agency action is entitled to great deference." *Alabama-Tombigbee*

*Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007) (citations omitted). Under the Administrative Procedure Act, this court must set aside any agency action, finding or conclusion that is found to be arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence. 5 U.S.C. § 706(2); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 824, 28 L. Ed. 2d 136 (1971). However, we cannot substitute our judgment for that of the agency. *Kempthorne*, 477 F.3d at 1254. Instead, we must look to see "whether an agency's decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Sierra Club v. Johnson*, 436 F.3d 1269, 1273–74 (11th Cir. 2006)).

B.

In the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriation Act of 2001, Pub. L. No. 106-387, § 815, 114 Stat. 1549, 1549A-55 (2000), Congress directed the Secretary of Agriculture to use Commodity Credit Corporation ("CCC") funds "to make emergency financial assistance . . . available to producers on a farm that have incurred [specified] qualifying losses." "Qualifying losses" include "losses due to damaging weather .

12

. . associated with crops that are, as determined by the Secretary[,] (1) quantity losses for the 2000 crop; (2) quality losses for the 2000 crop; or (3) severe economic losses for the 2000 crop." § 815, 114 Stat. at 1549A-55–1549A-56. The program applies to "losses for all crops, as determined by the Secretary, due to disasters[,] including . . . nursery losses in the State of Florida that occur[red], because of disaster, during the period beginning on October 1, 2000, and ending on December 31, 2000." § 815, 114 Stat. at 1549A-56.

Following Congress's directive, the USDA, through the CCC, promulgated 7 C.F.R. Part 1480 (2002), to implement the 2000 Crop Disaster Program. *See* 7 C.F.R. § 1480.1 (2002). The regulations provide that "[t]he program will be administered under the general supervision of the Executive Vice President, Commodity Credit Corporation (CCC), and shall be carried out in the field by Farm Service Agency (FSA) State and county committees." 7 C.F.R. § 1480.2(a) (2002). The regulations further provide that "[p]roducers in the United States will be eligible to receive disaster benefits . . . only if they have suffered [ ] crop losses of eligible crops" due to specified disasters. 7 C.F.R. § 1480.4(a) (2002). Also, the terms "eligible crop" and "value loss crop" were assigned the meanings assigned to those terms by 7 C.F.R. Part 1437 (Noninsured Crop Disaster Assistance Program Regulations for the 1998 and Succeeding Crop Years). 7

13

C.F.R. § 1480.3 (2002); *see* 7 C.F.R. § 1437.3 (2002) (defining "eligible crop" and "value loss crop" to include, "ornamental nursery crop" as a "decorative plant grown in a container or controlled environment for commercial sale"). Furthermore, the regulations provide that eligible disasters include "freeze[s]," 7 C.F.R. § 1480.10(a)(1), and, moreover, the regulations state that disaster benefits for "ornamental nursery crops . . . are limited to ornamental nursery crops that were grown in a container or controlled environment for commercial sale on property owned or leased by the producer, and cared for and managed using good nursery growing practices." 7 C.F.R. § 1480.18(d) (2002). "[D]isaster benefits under [Part 1480] are calculated based on the loss of value at the time of disaster, as determined by CCC." 7 C.F.R. § 1480.18(b).

The National Appeals Division ("NAD") is responsible for adjudicating specified administrative appeals from adverse decisions by certain agencies within the USDA. *See* 7 U.S.C. §§ 6991–7002 (2000). The NAD's responsibilities include the adjudication of appeals from adverse decisions by the CCC, the FSA, and the FSA State, county, and area committees, *see* 7 C.F.R. § 11.1 (2002) (defining the term "agency" as including local committees), including appeals from the "[d]enial of participation in, or receipt of benefits under, any program of an agency[.]" 7 C.F.R. § 11.3 (2002).

14

C.

With respect to John and Shelby Mahon, the issue before this court is whether the district court erred in finding that the USDA's interpretation of its regulations implementing the 2000 Crop Disaster Program was reasonable. First, John and Shelby Mahon argue that the district court erred in finding that they operated an "ornamental nursery" as defined under 7 C.F.R. § 1480.18(d). John and Shelby Mahon claim that their citrus operations do not fall within the agency's own definition of "eligible nursery crops" of an "ornamental nursery." In fact, they argue, that their crops are explicitly excluded by the definition set forth in the FSA's handbook.

The *2000 Crop Disaster Program Handbook*, 3-DAP Amend. 1, ¶ 93 (2000), states as follows:

> Eligible ornamental nursery includes decorative plants grown in a container or controlled environment for commercial sale.
>
> Eligible nursery crops include, but are not limited to:
>
> - deciduous shrubs, broadleaf evergreens, coniferous evergreens, shade and flowering trees, etc.
>
> - seed stock for use as propagation in a commercial ornamental nursery operation.
>
>    Note: This includes fruit and nut seedlings

15

> grown for sale as seed stock for
> commercial orchard operations
> growing the fruit or nut.

Eligible nursery crops do not include:

- *edible varieties*

- plants produced for reforestation purposes or for
  the purposes of producing a crop for which NAT
  or crop insurance does not provide protection.

*Id.* (emphasis added).  Accordingly, since John and Shelby Mahon's citrus trees produced "edible fruit," they argue, their crops could not fall under the definition of "ornamental nursery," and their citrus trees were not required to have been grown for "commercial sale" in order to be eligible for disaster benefits.

The USDA contends that John and Shelby Mahon waived this argument by failing to raise it during the administrative proceedings. This court agrees with the USDA and finds that the argument was waived.

"Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency."  *Sims v. Apfel*, 530 U.S. 103, 114, 120 S. Ct. 2080, 2087, 147 L. Ed. 2d 80 (2000) (Breyer, J., dissenting); *accord Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2385–86 (2006);  *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37, 73 S. Ct. 67, 68–69, 97 L. Ed. 54 (1952);

16

*Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155,

67 S. Ct. 245, 249–51, 91 L. Ed. 136 (1946). As the Supreme Court explained

long ago:

> [O]rderly procedure and good administration require that objections
> to the proceedings of an administrative agency be made while it has
> opportunity for correction in order to raise issues reviewable by the
> courts. . . . [C]ourts should not topple over administrative decisions
> unless the administrative body not only has erred *but has erred*
> *against objection made at the time appropriate under its practice.*

*L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37, 73 S. Ct. at 69 (emphasis added).

Although true that requirements of administrative issue exhaustion are

principally "creatures of statute," *Sims v. Apfel*, 530 U.S. at 107, 120 S. Ct. at

2084, the requirements apply with equal force in many cases not involving a

statute or regulation. *Id.* at 108, 120 S. Ct. 2084. The basis for imposing a

judicially created issue-exhaustion requirement is an analogy to the general rule

that appellate courts will not consider arguments not raised before trial courts. *Id.*;

*see Hormel v. Helvering*, 312 U.S. 552, 556, 61 S. Ct. 719, 721, 85 L. Ed. 1037

(1941) (explaining rationale of issue-exhaustion requirement). This court has also

noted seven policy reasons for applying an issue exhaustion requirement:

> (1) to avoid premature interruption of the administrative process; (2)
> to let the agency develop the necessary factual background upon
> which decisions should be based; (3) to permit the agency to exercise
> its discretion or apply its expertise; (4) to improve the efficiency of

the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (Dubina, J.) (citing

*Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998)).

The Supreme Court has further opined that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Sims v. Apfel*, 530 U.S. at 109, 120 S. Ct. at 2085. Accordingly, where the parties are expected to fully develop the issues during the course of an adversarial administrative proceeding, the rationale for requiring issue exhaustion is at its strongest. *Id.* at 110, 120 S. Ct. at 2085. By contrast, where an administrative proceeding is not adversarial, the reasons for requiring issue exhaustion are much weaker. *Id.*; *see Shepard v. NLRB*, 459 U.S. 344, 351, 103 S. Ct. 665, 670, 74 L.Ed.2d 523 (1983) (noting the wide differences between administrative agencies and courts).

In the instant case, the NAD administrative appeal procedures do not impose an issue-exhaustion requirement. The NAD's regulations do require

18

claimants to exhaust the NAD's administrative appeal procedures prior to seeking judicial review, 7 C.F.R. §§ 11.2(b), 11.13(b) (2002), and the regulations require claimants to state the reasons why the adverse decision was incorrect at several stages of the litigation, 7 C.F.R. §§ 11.6(b)(2), 11.8(c)(2), 11.9(a), 11.11 (2002), however, there is no express requirement in the regulations that a party must list the specific issues that the reviewing court will consider. *See Ballanger v. Johanns*, 451 F. Supp. 2d 1061, 1068 (S.D. Iowa 2006) ("[T]he Court is not aware of any statute or regulation that requires issue exhaustion for an appeal from the NAD").[5] *Compare with* 20 C.F.R. § 802.211 (2002) (requiring that in a petition filed before the Benefits Review Board of the Department of Labor, the petition must "[s]pecifically state[] the issues to be considered by the Board).

Although there is no express issue exhaustion requirement in the NAD regulations, a review of the NAD's Rules of Procedure reveals that NAD proceedings are "adversarial" in nature. The director and hearing officer are charged with "the authority to administer oaths and affirmations" and they may issue subpoenas for the attendance of witnesses and the production of evidence at

---

[5]Although this Court is not bound by the district court's decision in *Ballanger v. Johanns*, 451 F. Supp. 2d at 1061, this Court notes that it is the only other published case dealing with the issue of whether the NAD procedures constitute adversarial proceedings. Moreover, this Court finds that *Ballanger* is a well reasoned decision, and is accordingly very persuasive.

19

the request of either party. 7 C.F.R. § 11.8(a)(2) (2002). Upon a timely request, the appellant is entitled to a hearing, the hearing officer receives written statements of each sides' position, and takes evidence into the hearing record. 7 C.F.R. § 11.8(c). Also, during the course of the hearing "[a]ny party shall have the opportunity to present oral and documentary evidence, oral testimony of witnesses, and arguments in support of the party's position; controvert evidence relied on by any other party; and question all witnesses." 7 C.F.R. § 11.8(c)(5)(ii). The regulations also provide all parties with an opportunity to present evidence and raise issues that may not have been proffered or raised earlier in the administrative review process, either on account of omission or because they were not apparent at the time. The regulations provide that the hearing officer "will allow the presentation of evidence at the hearing by any party without regard to whether the evidence was known to the officer, employee, or committee of the agency making the adverse decision at the time the adverse decision was made." *Id.* In addition, at the Director Review phase, the director issues a final determination upholding, reversing, or modifying the determination of the hearing officer. 7 C.F.R. § 11.9(d)(1). The director also retains the discretion to remand all or a portion of the determination to the hearing officer, or hold a new hearing if new evidence is presented. *Id.*

The NAD's procedures provide an adversarial system in which parties are given a full and fair opportunity to make their arguments and present evidence, and, as a corollary, to attempt to challenge the arguments and evidence presented by the agency. As such, the adversarial nature of the administrative proceedings counsel against allowing John and Shelby Mahon to raise new arguments that were not raised during the course of their administrative appeal or during the Director Review phase. *Sims v. Apfel*, 530 U.S. at 109–10, 120 S. Ct. at 2084–85. The Agency was not on notice of John and Shelby Mahon's argument prior to this appeal and at this stage neither party can present evidence. *See Hormel v. Helvering*, 312 U.S. at 556, 61 S. Ct. at 722. Furthermore, John and Shelby Mahon were given every opportunity to raise their arguments at each phase of the administrative proceeding, *see* 7 C.F.R. §§ 11.8(c)(5)(ii), 11.9(d)(1), and the Agency was denied the opportunity to exercise its discretion and expertise in considering the issue. *See Sims v. Apfel*, 530 U.S. at 114, 120 S. Ct. at 2087–88 (Breyer, J., dissenting); *Johnson v. Meadows*, 418 F.3d at 1156; *Ballanger v. Johanns*, 451 F. Supp. 2d at 1069.

In their reply brief, John and Shelby Mahon argue that the district court's conclusion that they were operating an "ornamental nursery" under 7 C.F.R. 1480.18(d) constitutes plain error and that plain error trumps any alleged waiver.

In support of their argument, they cite *Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997), for the proposition that this court may correct an error that was not raised *before the district court* on a showing of plain error. *See id.* at 466–67, 117 S. Ct. 1548–49. Although John and Shelby Mahon fail to further explain their theory, they appear to imply that the inference to be drawn from *Johnson* is that even if an issue was waived during the administrative process, and the issue was never raised before the district court, the issue may be reviewed by the appellate court if the district court commits plain error, thus, this court can review the error. Said differently, if the district court commits plain error with respect to an issue that was never raised during the administrative process, and never raised before it, the issue may nevertheless be reviewed by this court. This argument is unsupported by the law and is accordingly rejected.

In *Johnson v. United States*, the Supreme Court was considering a direct appeal of a criminal conviction, and not an administrative adjudication. *Id.* at 463, 117 S. Ct. at 1547. Specifically, the *Johnson* Court was examining whether Federal Rule of Criminal Procedure 52(b), which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [district] court," required that the court examine several issues that the defendant failed to raise at trial. *Id.* at 464–68, 117 S. Ct. at

22

1547–49. The *Johnson* Court found that Rule 52(b) did not mandate review because the "forfeited error" did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 469, 117 S. Ct. at 1550 (internal alterations and citations omitted). In the instant case, the Federal Rules of Criminal Procedure are inapplicable, and, furthermore, there is no indication that the alleged error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." As such, *Johnson* does not provide an exception to the general rule that in *administrative cases* "a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency." *Sims v. Apfel*, 530 U.S. at 114, 120 S. Ct. at 2087 (Breyer, J., dissenting).

D.

John and Shelby Mahon also argue that even assuming that their citrus trees were "ornamental nursery crops," as defined under 7 C.F.R. § 1480.18(d) (2002), the district court erred by affirming the NAD's determination that they were required to register as commercial producers under Florida law, as set out by section 581.131, Fla. Stat. (2000), in order to satisfy section 1480.18(d)'s requirement that "ornamental nursery crops" must be held for "commercial sale" at the time of the disaster in order to qualify for federal disaster assistance. They also argue that the Agency acted arbitrarily and capriciously by (1) only applying

23

that portion of section 581.131 which was adverse to the Mahons and by ignoring the statute's added written notice requirement which required the state to provide the Mahons with sixty days notice prior to their certification expiration date, (2) denying the Mahons benefits while others who were also not certified as commercial producers under Florida law were granted benefits, and (3) ignoring evidence that the Mahons were engaged in the commercial sale of citrus trees. The USDA responds by arguing that its interpretation of the term "commercial sale" is reasonable, therefore, this court should defer to the USDA's interpretation and affirm its decision to deny benefits to John and Shelby Mahon. This court finds that the USDA's decision that John and Shelby Mahon were not engaged in the "commercial sale" of their citrus trees was arbitrary and capricious and contrary to the law and the evidence.

As this court has explained, an agency's decision should "be set aside only if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Sierra Club v. Johnson*, 436 F.3d at 1273. When reviewing "an agency's interpretation of a statute that the agency is responsible for administering, we apply a two-part test." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781–82, 81 L. Ed. 2d 694 (1984)); *see also Cadet v. Bulger*, 377 F.3d 1173, 1185 (11th Cir.

2004); *Lewis Barnhart*, 285 F.3d 1329, 1333 (11th Cir. 2002); *Legal Envtl. Assistance Found. v. EPA*, 118 F.3d 1467, 1473 (11th Cir. 1997).  First, if congressional intent is clear, then this court and the agency must give effect to the unambiguously expressed intent of Congress.  *Sierra Club v. Johnson*, 436 F.3d at 1273; *Cadet v. Bulger*, 377 F.3d at 1185 (11th Cir. 2004).  On the other hand, if the statute is silent or ambiguous with respect to the particular issue, we are obligated to defer to the agency's interpretation of the statute so long as that interpretation is reasonable.  *See Cadet v. Bulger*, 377 F.3d at 1185; *Mazariegos v. Office of the U.S. Att'y Gen.*, 241 F.3d 1320, 1327 n.4 (11th Cir. 2001).  The agency's interpretation shall be considered reasonable and controlling so long as it is not "arbitrary, capricious, or manifestly contrary to the statute."  *Dawson v. Scott*, 50 F.3d 884, 887 (11th Cir. 1995) (quoting *Chevron*, 467 U.S. at 844, 104 S. Ct. at 2782).

"An agency's interpretation of its own regulations is 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Sierra Club v. Johnson*, 436 F.3d at 1274 (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 911, 137 L. Ed. 2d 79 (1997)); *see also Brennan v. S. Contractors Serv.*, 492 F.2d

498, 501 (5th Cir. 1974)[6] (holding that Secretary of Labor's interpretation of a regulation promulgated under Occupational Safety and Health Act was entitled to "great weight").  This deferential standard is applicable so long as the agency does not formulate a regulation that merely parrots the statute it is designed to implement.  *Gonzales v. Oregon*, ___ U.S. ___, 126 S. Ct. 904, 916, 163 L. Ed. 2d 748 (2006) ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.").

After reviewing the statute and its legislative history, it is apparent that Congress failed to provide any guidance with respect to the meaning of the term "commercial sale," therefore, Congress has implicitly left a gap in the statutory scheme that must be filled by the USDA.  *See Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782 ("The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.") (internal citations and alterations omitted).  As such, this court must defer to the agency's interpretation of the term "commercial sale" so long as it is reasonable.

---

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981.

The terms and conditions for the 2001 and 2002 Crop Disaster Program are set forth under 7 C.F.R. Part 1480 (2002). *See* 7 C.F.R. § 1480.1. The purpose of the program is to provide disaster assistance to producers who incurred losses due to disasters occurring in 2001 and 2002. *Id.* Specifically, 7 C.F.R. § 1480.4(a) provides that "[p]roducers in the United States will be eligible to receive disaster benefits under this part only if they have suffered losses of eligible crops in 2001 or 2002 as a result of a disaster or related condition . . . ." For ornamental nursery crops, "disaster benefits . . . are limited to ornamental nursery crops that were grown in a container or controlled environment for *commercial sale* on property owned or leased by the producer, and cared for and managed using good nursery growing practices." 7 C.F.R. § 1480.18 (emphasis added).

The Agency denied John and Shelby Mahon disaster relief because the Agency concluded that their nursery crops were not for "commercial sale." In order to provide the term "commercial sale" with meaning, the Agency looked to Florida law, which provides that before any person can sell or distribute nursery stock in the state, they must be registered with the state. § 581.131, Fla. Stat. Since John and Shelby Mahon were not registered with the state at the time of the disaster, and were therefore prohibited from distributing nursery stock under

27

Florida law, the Agency concluded that their crops were not for commercial sale.[7]

The Mahons argue that the Agency violated 7 C.F.R. § 1480.2(b) (2002), which provides that "FSA State and county committees and representatives do not have the authority to modify or waive any of the provisions of [Part 1480]," by deferring to Florida law and by incorporating and relying upon compliance with Florida's registration requirements to determine eligibility for federal disaster assistance. As an alternative argument, though obliquely stated, John and Shelby Mahon assert that even if it is reasonable that the Agency relied upon Florida law, it was nevertheless arbitrary and capricious for the Agency to apply the statute when the state failed to send them a renewal notice as required by section 581.131, Fla. Stat. *See* § 581.131(8), Fla. Stat. (providing that "[t]he department shall provide to each person subject to this section written notice and renewal forms 60 days prior to the annual renewal date informing the person of the certificate of registration renewal date and the applicable fee."). Put simply, John and Shelby Mahon argue that the Agency's selective application of the Florida statute was arbitrary and capricious.

---

[7] Florida law provides "[i]t is unlawful for any nurseryman, stock dealer, agent, or plant broker to sell, give away, transfer, move or cause to be moved, carry, ship, or deliver for carriage or shipment any nursery stock except in compliance with the provisions of this chapter and the rules made pursuant to law." § 581.121, Fla. Stat.

This Court finds that while it is reasonable for the Agency to rely upon state law to provide meaning to an undefined statutory term, *see Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782, the USDA acted arbitrarily in selectively applying only part of the Florida statute. Under section 581.131, Fla. Stat., in order to sell their citrus crops in Florida, the Mahons must register with the state. However, the state is required to provide them with sixty days notice prior to the annual renewal date. During the administrative proceedings, the Mahons testified that they never received the statutorily required notice, and the agency failed to present evidence rebutting this testimony. This court cannot condone an agency's practice of picking and choosing mere portions of a state statute, instead, in cases where an agency chooses to incorporate a state statute it should, if practicable, incorporate the whole statute, and not just isolated portions that support a certain result. This practice serves to insure consistency and predictability in the administrative process.

Aside from the issue of selectively incorporating only those provisions that were adverse to the Mahons, another issue remains, and that is whether the Florida statute should apply to the instant case at all. Although not addressed by the parties in their briefs, this Court notes that a USDA official in another benefits case similar to this one rendered an opinion that section 581.131, Fla. Stat. would

only apply if a claimant's crops were eligible for sale at the time of the disaster. Thus, under this standard, the fact that the Mahons were not registered as commercial producers would only be relevant if their crops were ripe and ready for sale at the time they were destroyed.[8] The district court failed to consider whether section 581.131 should be interpreted this way, or whether the statute applies regardless of whether the Mahons' crops were ready for sale. Furthermore, this court finds it troubling that the USDA would interpret and apply section 581.131 so differently with respect to two similarly situated claimants.

John and Shelby Mahon further claim that the Agency acted arbitrarily by denying them benefits while the evidence demonstrated that over one million dollars was awarded to other non-registered producers in the State of Florida. Such disparate treatment of similarly situated producers, they argue, demonstrates the Agency's arbitrary and capricious treatment of their claims. In addition, John and Shelby Mahon argue, in effect, that the Agency acted arbitrarily and capriciously in ignoring evidence that they were engaged in the "commercial sale" of citrus trees. After considering these contentions, this court is convinced that the Agency acted arbitrarily and capriciously by treating similarly situated producers

---

[8] This court finds nothing in the record indicating whether the Mahon's crops were ready for sale at the time of the disaster. Accordingly, the district court may need to determine whether the Mahon's crops were eligible for sale.

30

differently, and by ignoring evidence which supported the Mahon's claims.

First, the record demonstrates that the Agency made payments to other uncertified nurseries, who had suffered the same type of loss, and that even $325,958.00 was paid to uncertified nurseries by the very same County Committee that originally rejected John and Shelby Mahon's claims. Also, the Agency arbitrarily chose to ignore evidence establishing that John and Shelby Mahon were in the business of selling citrus trees. The record demonstrates that they had been growing and selling citrus trees for over twenty years, and that they were continuing to grow over 175,000 trees, which were grown in individual containers on their 126-acre nursery at the time of the disaster. Why were they growing so many trees on their farm in individual containers? For personal use?[9] Furthermore, during the administrative process the Mahons introduced several receipts into evidence which demonstrate that they were continuing to sell their nursery stock. Logically, these facts suggest that they were indeed in the business of growing and selling citrus trees.

While true that agencies are granted tremendous deference in interpreting Congressional directives and in formulating implementing regulations, that

---

[9] It seems that this was indeed the Agency's conclusion. However, common sense seems to dictate that if a person were going to plant 175,000 citrus trees for personal use, *i.e.*, to pick and eat the fruit, they would plant the trees in the ground and not in pots.

deference must end when an agency acts as arbitrarily and obtusely with regard to the law and facts as the USDA did here. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 416, 91 S. Ct. at 824; *Sierra Club v. Johnson*, 436 F.3d at 1273–74. Accordingly, the law requires that the decision of the district court be vacated.

E.

Turning to Paul Mahon's appeal, we first note that under 7 U.S.C. § 6912(e), before a party may bring an action in federal court they must "exhaust all administrative appeal procedures established by the Secretary." In implementing this explicit Congressional directive, the agency promulgated 7 C.F.R. § 11.2(b) (2002), which provides that a person "shall seek review of an adverse decision before a Hearing Officer," and "may seek further review by the Director," before seeking judicial review. *See also* 7 C.F.R § 11.13(b) (2002). Thus, we must determine whether Paul Mahon did indeed exhaust his administrative remedies.

Paul Mahon's contention is that this court should reverse the NAD's rejection of his administrative appeal on the ground that he had not filed a personally signed request for appeal within the thirty-day time limit established by 7 C.F.R. § 11.6(b)(1) and (2) (2002). However, he fails to argue that he complied with the applicable regulations, that the applicable regulations did not require his

32

personal signature, or that the NAD's interpretation of the applicable regulations was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Instead, he baldly claims that the NAD should have accepted his late appeal and that the district court erred by concluding that he had not exhausted his administrative remedies. Without citing any federal authority, he claims that the district court had the inherent power to find that he substantially complied with the NAD procedures based on his attorney's prior requests to appeal, and because his failure to comply with the "technical details" of the regulations had been "inadvertent." We find that these arguments are without merit.

Pursuant to 7 C.F.R. § 11.6(b)(1), once Paul Mahon received notice that his claim for disaster relief had been denied, he had thirty days to appeal the adverse decision. Since he requested mediation prior to filing an appeal, however, the thirty-day period was tolled and he had the balance of the days remaining in that period to file an appeal after mediation concluded. *See* 7 C.F.R. § 11.5(c)(1).

Paul Mahon received notice that his application was denied on November 13, 2001. On December 5, 2001, or twenty-two calendar days later,[10] he gave notice to the agency that he intended to exercise his right to mediation. As such, the thirty-day period was tolled and he had a total of eight days to file an appeal

---

[10] According to 7 C.F.R. § 11.1, "[d]ays mean calendar days unless otherwise specified."

after mediation concluded. Taking the later mediation impasse date of May 28, 2002,[11] as the relevant date, Paul Mahon had eight days, or until June 5, 2002, to submit an appeal. Before the time to appeal had expired, Paul Mahon's attorney requested an appeal on May 29, 2002, but the request was not personally signed by Paul Mahon. In fact, Paul Mahon did not file a personally signed request for an appeal with the agency until June 14, 2002, nine days after the appeal period had expired.

7 C.F.R. § 11.6(b) provides the applicable procedures that must be followed when requesting an appeal from an adverse agency decision. That section provides as follows:

> (1) To obtain a hearing under § 11.8, a participant *personally* must request such hearing not later than 30 days after the date on which the participant first received notice of the adverse decision or after the date on which the participant receives notice of the Director's determination that a decision is appealable. . . .

> (2) A request for a hearing *shall be in writing and personally signed by the participant*, and shall include a copy of the adverse decision to be reviewed, if available, along with a brief statement of the participant's reasons for believing that the decision, or the agency's failure to act, was wrong. The participant also shall send a copy of the request for a hearing to the agency, and may send a copy of the adverse decision to be reviewed to the agency, but failure to do either will not constitute grounds for dismissal of the appeal. Instead of a

---

[11]In a letter sent to Paul Mahon, denying his request to appeal, the NAD contended that mediation reached an impasse on April 25, 2002.

hearing, the participant may request a record review.

*Id*. (emphasis added). Accordingly, the plain text of the regulation requires that a

person seeking appellate review must request such review within thirty days and

must *personally sign* the request.[12] Since it is undisputed that Paul Mahon failed

to sign the request within the applicable thirty-day period, we find that he failed to

exhaust his administrative remedies, and is barred from seeking judicial review.[13]

---

[12] As the district court noted, although section 11.6(b) uses the term "hearing," the section is applicable even if a participant does not request an actual hearing. The regulations, when read as a whole, contemplate § 11.6 as the sole procedural mechanism for a party seeking to appeal an agency's adverse decision. *See e.g.*, 7 C.F.R. § 11.5(c)(1) (providing that "participant stops the running of the 30-day period during which a participant may appeal to [the National Appeals Division] under 11.6(b)(1) . . .").

[13] Paul Mahon's arguments indirectly raise an issue of first impression for this Court. Specifically, whether the exhaustion requirement found in section 6912(e) is jurisdictional or non-jurisdictional in nature. The Supreme Court has explained that under a jurisdictional statute an exhaustion of administrative remedies requirement cannot be excused or waived, and a party's failure to exhaust serves as a jurisdictional bar. *See Weinberg v. Salfi*, 422 U.S. 749, 765–66, 95 S. Ct. 2457, 2466–67, 45 L. Ed. 2d 522 (1975). By contrast, a non-jurisdictional statute codifies the common law exhaustion principle under which, for reasons of judicial economy and administrative expertise, exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule. *See Honig v. Doe*, 484 U.S. 305, 326–27 108 S. Ct. 592, 606, 98 L. Ed. 2d 686 (1988); *see also Ace Prop. and Cas. Ins. Co. v. Federal Crop Ins. Corp.*, 440 F.3d 992, 996–97 (8th Cir. 2006) (explaining the distinctions between non-jurisdictional and jurisdictional exhaustion requirements and finding that the administrative exhaustion requirement set out in 7 U.S.C. § 6912 is jurisdictional). However, this Court need not resolve that issue in the instant case because Paul Mahon's proffered reasons for excusing his failure to exhaust administrative remedies—substantial compliance with the statute and regulations, and his inadvertent failure to comply with the technical details of the statute and the regulations—do not fall within the recognized exceptions to non-jurisdictional exhaustion requirements. *See, e.g., Cochran v. United States Health Care Fin. Admin.*, 291 F.3d 775, 780 (11th Cir. 2002) (finding that non-jurisdictional administrative exhaustion requirements may be bypassed if resort to them would be futile, or if the remedy is inadequate). As such, Paul Mahon's claim fails regardless of whether we find that section 6912 is jurisdictional or not.

## III. Conclusion

For the above stated reasons, with respect to John and Shelby Mahon's appeal we find that the USDA acted arbitrarily and capriciously in denying their claims for relief under the 2000 Crop Disaster Program. As to Paul Mahon, we conclude that he failed to exhaust available administrative remedies and is therefore barred from seeking judicial review. Thus, we **VACATE** the district court's order denying John and Shelby Mahon's motion for summary judgment and granting summary judgment in favor of the USDA, and **REMAND** to the district court for further proceedings consistent with this opinion. With respect to Paul Mahon, the judgment of the district court is **AFFIRMED**.

COX, Circuit Judge, specially concurring:

I concur in the judgments, and I join that part of the majority opinion addressing Paul Mahon's appeal. I do not join that part of the opinion addressing John and Shelby Mahon's appeal because my analysis differs from that of the majority.

The regulation applied in this case provides disaster benefits for nursery crops that are "grown in a container or controlled environment for commercial sale on property owned or leased by the producer . . . ." 7 C.F.R. § 1480.18(d) (2000). The district court, concluding that *Chevron* deference was due, granted summary judgment to the agency, affirming the denial of the Mahons' application for disaster benefits based upon the Deputy Director's finding that the plants were not grown for commercial sale.

I disagree with the district court and the majority's view that *Chevron* deference is due the agency action here. The Deputy Director was not interpreting any federal statute. Neither was he, as the district court believed, interpreting any federal agency regulation. Indeed, the only "interpretation" he offered was that "[t]he program is intended to reimburse persons in the business of selling ornamental nursery crops, not persons growing the plants for their own use." The parties do not dispute that interpretation.

The Deputy Director decided only one question: whether the Mahons' plants were grown for commercial sale. This is a question of fact.[1] And, questions of fact resolved by an agency through an adjudicatory hearing process are properly reviewed by a court under the substantial evidence test. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-15, 91 S. Ct. 814, 822-23 (1971) (citing 5 U.S.C.§§ 556, 557); *see also* 5 U.S.C. § 706(2)(E).

Here, the Deputy Director's decision that the Mahons' plants were not grown for commercial sale is not supported by substantial record evidence. In reaching his conclusion, the Deputy Director relied on one fact only – that the Mahons were delinquent in paying the $552 registration fee that Florida law requires for the sale of nursery stock. But, the record contains other undisputed evidence relevant to the question of whether the plants were grown for commercial sale. In addition to the large scale of the Mahons' citrus growing operation, the officer who conducted the evidentiary hearing found: that the Mahons had been in the nursery business for about 20 years; that all of the plants for which the Mahons sought payment had been grown in individual containers and intended for sale; and that the Mahons were engaged in the nursery business during the period that

---

[1] The Deputy Director's decision acknowledges that it rests on a determination of fact. "I have concluded that the determination was based on a material fact that was in error. I therefore vacate the determination."

they were not registered pursuant to the Florida statute. The agency's failure to consider all of this undisputed evidence renders its finding of fact unsupported by substantial evidence.