**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1017**

STEVE BASS; TERRY H. BASS,

                    Plaintiffs – Appellants,

          v.

TOM VILSACK, Secretary United States Department of
Agriculture,

                    Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington.  Malcolm J. Howard,
Senior District Judge.  (7:11-cv-00239-H)

Argued:  October 30, 2014          Decided:  December 31, 2014

Before SHEDD, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Thomas A. Lawler, LAWLER & SWANSON, Parkersburg, Iowa,
for Appellants.   Matthew Fesak, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**
Thomas G. Walker, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The "Swampbuster" provision of the Food Security Act, 16 U.S.C. § 3821, prohibits persons who participate in programs administered by the United States Department of Agriculture ("USDA" or "the agency") from converting wetlands to agricultural use without authorization. Appellants Steve and Terry Bass (collectively "the Basses") seek judicial review of a final decision of the USDA finding them in violation of this provision. Because we agree with the district court that the agency conformed with controlling statutes and did not commit a clear error of judgment in its decision, we affirm.

I.

This case centers around a piece of farmland in Sampson County, North Carolina, referred to as Farm 3188, Tract 8355, Field UN2 ("Field UN2"). Joe Bass, the original owner of this tract, filed an application in 1994 with the USDA seeking a wetland determination in anticipation of clearing Field UN2 for agricultural crop production. The National Resources Conservation Service ("NRCS"), the division of the USDA responsible for making wetland determinations, concluded that

2

Field UN2 contained approximately 38 acres of wetlands.[1] Joe Bass was properly notified of this determination and informed that clearing, draining, or altering these areas to make possible the planting of a commodity crop would render him ineligible for most USDA farm programs. Joe Bass took no further administrative action regarding the NRCS determination, which thus became final.

In 2004, Joe Bass again filed an application seeking to convert Field UN2 to farmland, falsely representing that he had not "previously received a wetland determination or delineation on this tract from [NRCS.]" (J.A. 103.) Apparently unaware of the 1994 wetland determination, an NRCS wetland specialist completed an on-site inspection of Field UN2, which resulted in another NRCS wetland determination, issued March 23, 2005, concluding that the tract contained at least 28 acres of wetlands.

NRCS informed Joe Bass that this determination would become final unless he requested further review or mediation within thirty days. However, the NRCS letter did not include, as required by USDA regulations, a notice that he could also appeal to the USDA's National Appeals Division ("NAD"). This defect

_____

[1] NRCS was then known as the Soil Conservation Service. For ease of reference, we refer to this division and its predecessors as NRCS.

rendered the 2005 determination procedurally deficient. Nonetheless, Joe Bass did not pursue an appeal and he later died. His interest in Field UN2 passed to the Basses.

NRCS was required and did notify the U.S. Army Corps of Engineers ("USACE") of its 2005 wetlands determination, which prompted the USACE to issue a letter to the Basses advising that it might also have jurisdiction over Field UN2 under the Clean Water Act. The USACE letter recommended having the property inspected. The Basses then hired a private consultant, the Land Management Group, Inc. ("LMG"), to provide wetland mapping for the tract. LMG prepared a report finding no wetlands on Field UN2, but its evaluation did not meet any of NRCS's requirements for determining the presence of wetlands under the Food Security Act.

In response to the LMG report, the USACE conducted a site visit and found waters of the United States over which it had jurisdiction along the southern boundary of Field UN2. The USACE then notified the Basses that this determination only "applies to Section 404 of the Clean Water Act," and that it "may or may not be valid for identifying wetlands or waters subject to the rules of the Food Security Act." (J.A. 434.)

Without contacting or seeking any information from NRCS, the Basses drastically altered Field UN2 by removing the natural forest and woody vegetation through logging, stump removal,

4

drainage, and disking to prepare the tract for agricultural use. The Basses sought a cropland acreage determination from the USDA, which triggered an investigation by NRCS to determine if the Food Security Act was violated by the alteration of the tract.

NRCS conducted an on-site inspection and determined that Field UN2 contained wetland hydrology prior to its alteration. As part of its investigation, NRCS also examined whether the Basses could qualify for a minimal effects exemption under 16 U.S.C. § 3822(f), which permits alteration of a wetland if the changes have only a "minimal effect on the functional hydrological and biological value of the wetlands in the area[.]" Id. The exemption did not apply because NRCS determined that the effects of the wetland conversion were greater than minimal.

NRCS then worked with the Basses to determine the feasibility of mitigating the converted wetlands on Field UN2, but those efforts proved unsuccessful. Consequently, NRCS issued a final technical determination in June 2010 finding that Field UN2 contained at least 13.5 acres of converted wetlands. The Basses were then declared ineligible for programs or benefits administered by the USDA.

The Basses timely filed an administrative appeal with the NAD, which held a lengthy evidentiary hearing. In a written

5

decision, the NAD affirmed NRCS's final determination that Field UN2 contained converted wetlands in violation of 16 U.S.C. § 3821. The hearing officer found that NRCS had met its burden of proving that wetlands were present on Field UN2 prior to its alteration, and it now contained at least 13.5 acres of converted wetlands. In addition, the hearing officer found NRCS's evidence and testimony more credible, specifically observing that the Basses' private consultant did not complete its wetland survey in compliance with the applicable guidelines.

Pertinent here, the Basses attempted to argue that no wetlands existed on Field UN2 prior to their conversion activities. The hearing officer found this issue barred under 7 C.F.R. § 12.30(c)(4), which provides that once a final wetland determination has been made any appeal regarding a potential conversion is "limited to the determination that the wetland was converted[.]" Id. Noting the absence of any evidence that NRCS had rescinded its 1994 determination or that the property's prior owner had appealed that determination, the hearing officer precluded the Basses from presenting evidence that the property did not contain wetlands.

The Basses then filed this lawsuit seeking judicial review of the USDA's final action. Their complaint raised several claims, but only two are now at issue on appeal: (1) did the NAD hearing officer err by limiting their appeal in the manner noted

6

above; and (2) did NRCS incorrectly perform a minimal effects determination in compliance with 16 U.S.C. § 3822(f)?

The district court granted the USDA's motion for summary judgment, finding no error in the hearing officer's decision to preclude the Basses from re-litigating the question of whether wetlands ever existed on Field UN2. Specifically, the court held:

> [T]here was at least one valid prior certified wetland determination in existence at the time of the plaintiffs' conversion of Field UN2. In such circumstances, the review of the agency's 2010 determination that conversion occurred is properly limited to that question of conversion on appeal before the agency, and thus to this court as well. . . .
>
> . . . .
>
> . . . The agency reasonably interpreted its own regulations by limiting the scope of review to whether a conversion took place, thus the court must defer to the agency.

(J.A. 62-64.) The district court also held that it lacked jurisdiction over the minimal effects claim because the Basses never pursued this argument during the administrative process and thus "failed to exhaust their administrative remedies[.]" (J.A. 64.)

The Basses timely appealed, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

7

II.

We review the district court's ruling on summary judgment de novo. See Holly Hill Farm Corp. v. United States, 447 F.3d 258, 262 (4th Cir. 2006). However, this Court, like the district court, reviews the underlying decision from the USDA pursuant to the Administrative Procedures Act ("APA"), under which the agency's decision must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A); see also Holly Hill Farm Corp., 447 F.3d at 262-63 (applying APA judicial review to a final determination of the NAD). Following this narrow standard, we are "not empowered to substitute [our] judgment for that of the agency." Md. Dep't of Human Res. v. U.S. Dep't of Agric., 976 F.2d 1462, 1475 (4th Cir. 1992) (citation and internal quotation marks omitted). Rather, our task is "to determine whether the agency conformed with controlling statutes," and "whether the agency has committed a clear error of judgment." Id. (citations and internal quotation marks omitted).

A.

The NAD hearing officer limited the Basses' appeal pursuant to 7 C.F.R. § 12.30(c)(4), which provides that if a prior wetlands determination exists for purportedly converted

8

property, any administrative appeal is limited to the issue of whether wetlands were converted. After remarking that the 2005 wetland determination was deficient, the hearing officer found that the 1994 determination was a final, certified decision for purposes of this regulation.

The Basses argue that the NAD hearing officer contravened 16 U.S.C. § 3822(a)(4) in reaching that conclusion, citing the statutory language that provides "[a] final [wetland] certification . . . shall remain valid and in effect . . . until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4). Relying on this provision, the Basses contend that the 1994 wetland determination was made void when Joe Bass requested a new wetland determination in 2004. They conclude that, because the 1994 determination was invalid at the time of their appeal, "7 C.F.R. § 12.30(c)(4)'s limitation [could] not apply [and] [t]he hearing officer's ruling to the contrary is an error of law." (Opening Br. 21.)

We find this argument to lack merit. By its plain terms, § 3822(a)(4) ends the validity of an existing wetland determination only when an aggrieved landowner "requests review" of that decision. We agree with the USDA's position (regardless of the deference applied) that Joe Bass's actions in 2004 were

9

not a request for review, making this provision inapplicable.[2] Accordingly, the NAD hearing officer did not act contrary to law in concluding that the 1994 determination was a valid wetland decision that limited the Basses' appeal.

Furthermore, even assuming the hearing officer erred in the manner alleged, the result in this case would be unaffected because the evidence was overwhelming that Field UN2 contained wetlands prior to its conversion. Any error on the part of the USDA was therefore harmless, and the Basses' argument fails. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (noting that the harmless-error doctrine is available in judicial review of administrative actions).

---

[2] Citing to SEC v. Chenery, 332 U.S. 194 (1947), the Basses contend that this argument is unavailable because it was not relied upon by the NAD hearing officer in the administrative decision below. While generally a reviewing court may only judge the propriety of an agency decision on the grounds invoked by the agency, see id. at 196-97, the court is not so bound when, as here, the issue in dispute is the interpretation of a federal statute. See N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor, 725 F.2d 238, 240 (4th Cir. 1984) ("We do not . . . perceive there to be a Chenery problem in the instant case because the question of interpretation of a federal statute is not 'a determination or judgment which an administrative agency alone is authorized to make.'" (citation omitted)).

B.

The Basses next claim that NRCS did not correctly perform a minimal effects determination under 16 U.S.C. § 3822(f). The district court determined it lacked jurisdiction to adjudicate this claim because the Basses never raised it during their administrative appeal. While we agree that the Basses are foreclosed from pursuing this claim on appeal, we reach that result on a different basis than the district court.

The Supreme Court has long held that it is inappropriate for courts to consider arguments not developed before an administrative agency because doing so usurps the agency's function. See Woodford v. Ngo, 548 U.S. 81, 88-91 (2006); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 36–37 (1952); see also Pleasant Valley Hosp., Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994) ("As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved."). As explained by the Supreme Court,

> orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. . . . [C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

11

L.A. Tucker Truck Lines, Inc., 344 U.S. at 37.

In Sims v. Apfel, 530 U.S. 103 (2000), the Supreme Court further explained that the need for issue exhaustion is, first and foremost, a question of statutory construction and that agencies generally have the power to adopt regulations requiring issue exhaustion. Id. at 107–08. Where the relevant statutes and regulations do not clearly require exhaustion, however, a court-imposed issue exhaustion requirement may be appropriate. Id. at 108. "[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." Id. at 109. Where the parties are expected to fully develop the dispute during the course of an adversarial proceeding, the rationale for requiring issue exhaustion is at its strongest. Id. at 110. Conversely, where an administrative proceeding is not adversarial, the reasons for requiring issue exhaustion are much weaker. Id.

There is no statute or regulation that mandates issue exhaustion in this case. See Mahon v. U.S. Dep't of Agric., 485 F.3d 1247, 1256 (11th Cir. 2007) ("[T]here is no express issue exhaustion requirement in the NAD regulations[.]"). However, the regulations that describe the review process before the USDA reflect that this process is adversarial and that issue exhaustion should be required. Id. ("The NAD's procedures

12

provide an adversarial system in which parties are given a full and fair opportunity to make their arguments and present evidence, and, as a corollary, to attempt to challenge the arguments and evidence presented by the agency."); see also Downer v. U.S. Dep't of Agric., 97 F.3d 999, 1005 (8th Cir. 1996) (noting that a general exhaustion of remedies is insufficient in the context of a wetlands determination, and specific issue exhaustion is required). Indeed, every court to address this question has found that issue exhaustion applies to similar proceedings before the USDA. See, e.g., Ballanger v. Johanns, 495 F.3d 866, 868-71 (8th Cir. 2007); Care Net Pregnancy Ctr. of Windham Cnty. v. U.S. Dep't of Agric., 896 F. Supp. 2d 98, 110 (D.D.C. 2012). Finding these cases persuasive, we agree that an issue exhaustion requirement applies.

The Basses had ample opportunity to raise the minimal effects claim at each phase of the administrative proceeding and before the NAD, yet they failed to do so. Instead, the Basses focused their administrative appeal on arguing that Field UN2 did not contain wetlands prior to its conversion. This course of action denied the USDA an opportunity to exercise its discretion and expertise in considering any minimal effects claim. On these facts, preclusion is appropriate. See Mahon, 485 F.3d at 1256-57 (precluding claims raised for the first time

in federal court and never presented to the NAD during the plaintiffs' administrative appeal).

Although the district court incorrectly viewed the foregoing as a jurisdictional bar, see Pleasant Valley Hosp., Inc., 32 F.3d at 70 ("[T]his general rule is not a strict jurisdictional bar, it is a prudential one[.]"), it was ultimately correct in its decision to forego review of this claim. Accordingly, we find the district court's decision without reversible error.[3]

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[3] Apparently forecasting this hurdle, the Basses argue that plain error would result if we decline to consider this claim. Under this doctrine, as applied in our civil jurisprudence, we will correct an error not raised previously if it is "'plain' and our refusal to consider it would result in a miscarriage of justice." Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988) (citation omitted). Plain error analysis, in the noncriminal context, is very rarely available, and then only to correct particularly egregious errors. See In re Under Seal, 749 F.3d 276, 285-86 (4th Cir. 2014). It is not at all evident that NASD erred in its minimal effects determination in the manner alleged. Moreover, this type of error does not constitute a "miscarriage of justice" as defined in our case law. See Holly Hill Farm Corp., 447 F.3d at 268; see also In re Celotex Corp., 124 F.3d 619, 631 (4th Cir. 1997). We therefore find this doctrine inapplicable.