[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11692
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cv-00091-LGW-JEG

ALMA BRIGHTLEAF, INC.,

Plaintiff-Appellant,

versus

FEDERAL CROP INSURANCE CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(October 21, 2013)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Alma Brightleaf, Inc., appeals the summary judgment in favor of the Federal

Crop Insurance Corporation.  Brightleaf, a farming operation, was covered by a

crop insurance policy issued by Producers Agriculture Insurance, which had a

standard reinsurance agreement with Federal Crop Insurance.  Brightleaf requested indemnification for damage to tobacco crops on two units of its farmland, Units 129 and 133, but the regional director for the Risk Management Agency denied insurance benefits.  After Brightleaf requested administrative review, the Deputy Director of the United States Department of Agriculture also denied Brightleaf insurance benefits.  Brightleaf filed a complaint for judicial review of the agency decision, and the district court ruled that the "conclusions [reached by the Deputy Director] were well-supported and well-reasoned."  We affirm.

## I. BACKGROUND

On July 28, 2008, a tornado touched down on property adjacent to Units 129 and 133.  Julian Rigby, the owner of Brightleaf, purportedly told his crop insurance agent about tornado damage to 116.24 acres of tobacco on Unit 129 and 38.08 acres of tobacco on Unit 133.  Rigby stated in his affidavit that, "[o]n either July 27th or 28th, 2008, [he] observed damage" to the two units; "[t]he next day, [he] tried to call [his] insurance agent, but [he] received no answer"; and "that same day" he "traveled to Baxley[, Georgia,] . . . reported the damage" and "was told that [his] claim was noted in writing and that an adjuster would be contacting [him]."  Producers Agriculture had no record that Rigby reported any damage to Units 129 and 133 in July 2008.

2

On August 25, 2008, a tropical storm affected some parts of the Brightleaf farm, and Rigby timely submitted a written notice of loss to Producers Agriculture. In his affidavit, Rigby stated that, "[o]n either August 25th or 28th, 2008, [he] reported another loss due to a Tropical Storm on an entirely different farm unit." According to Rigby, the "loss [in August] had nothing to do with the July 25th loss."

In early September 2008, an insurance adjuster for Producers Agriculture and representatives from the Risk Management Agency inspected 10 units of land on the Brightleaf farm for damage from the tropical storm. An agent of Risk Management reported that Brightleaf had "partially harvested" the tobacco on Unit 129 and fully harvested the tobacco on Unit 133 before the tropical storm. Brightleaf apparently told the inspectors that the units had also suffered tornado damage. The agent reported that Unit 129 had "reportedly sustained tornado damage on un-harvested production" of "51.31 acres," but "[a]ny evidence of tornado is impossible to discern due to mechanical damage to the remaining stalks." On September 22, 2008, the adjuster for Producers Agriculture called Rigby and "consent was given" for Brightleaf to "destroy the stalks on all" the tobacco crops because "[a]ll marketable tobacco [had] been harvested . . . ."

On April 3, 2009, a regional director for the Agency refused to indemnify Brightleaf for damage allegedly incurred on Units 129 and 133 on the ground that

3

Brightleaf had failed to provide timely notice of tornado damage.   The regional director found that Brightleaf "first [provided a] notice of loss for the 2008 CY . . . immediately after Tropical Storm Fay," which occurred "on August 25, 2008"; Brightleaf "reported that a tornado damaged Units 00129 and 00133" at the same time it "reported a loss due to the tropical storm"; Brightleaf "furnished a letter" from an adjoining property owner stating "that a tornado touched down on her property on July 28, 2008"; and the notice of loss reported by Brightleaf was "not [timely] given within the 72 hour timeframe as required by the Basic Provisions" of a Common Crop Insurance Policy, see 7 C.F.R. § 457.8 ¶ 14.

On November 12, 2009, the Acting Deputy Administrator for the Agency issued a decision disagreeing with the regional director, but "after reviewing the . . . claim file documents again," on December 23, 2009, the Deputy Administrator "rescind[ed] [her] previous decision" and "reissu[ed] [a] decision" that Brightleaf failed to give "[a] timely notice of loss . . . on units 00129 and 00133."  The Deputy Administrator found that "[t]here [was] no evidence that [Brightleaf] contacted [its] crop insurance agent within 72 hours of the July 28, 2009 tornado event"; "the first documented notice of loss . . . was reported . . . to [the] agent on August 25, 2008"; and "[s]ince harvest was complete on [the] two units prior to . . . Tropical Storm Fay, the storm could not have caused damage to production no longer in the field."

4

On May 10, 2010, a hearing officer upheld in part and reversed in part the decision of the Deputy Administrator.  The hearing officer agreed with the decisions "denying insurance indemnity" for Units 129 and 133 based on tornado damage and for "damage claim[ed] for tobacco unit 00133 following . . . Tropical Storm Fay."  The hearing officer found that Brightleaf failed to "provid[e] a claim of loss to [its] tobacco crop [on Units 129 and 133] . . . until on or about August 25, 2008," "which [was] beyond the required time constraints provided in the regulations," and that Brightleaf "did not experience a loss on tobacco unit 00133 due to . . . Tropical Storm Fay" because Brightleaf "had [already] harvested all [the] tobacco planted" on that unit.  But the hearing officer concluded that Brightleaf was entitled to indemnification for damage caused by the tropical storm to tobacco that remained unharvested on Unit 129 because Brightleaf "fulfilled the regulatory time constraints for filing a notice of loss claim" and "was in compliance with regulations when it destroyed the tobacco stalks after Insurer gave its consent to do so."

Both Brightleaf and the Agency appealed the decision of the hearing officer. Brightleaf argued that it provided timely notice of tornado damage to Unit 133. Brightleaf contended that the Agency had stipulated during a pre-hearing conference before the hearing officer that the only issue was whether Brightleaf had provided timely written notice of the damage.  According to Brightleaf, the

5

Agency agreed to the stipulation because one of its agents had said that a written document by an employee of the crop insurance agent had been found documenting that Rigby came by the crop insurance agent's office the day after the loss and the crop insurance agent must have received a notice of loss from Brightleaf or else it would not have been allowed to destroy the tobacco stalks. The Agency argued that the tropical storm could not have damaged Unit 129 because its tobacco crop had already been harvested and, alternatively, Brightleaf failed to leave strips of tobacco unharvested on Unit 129 to prove that it was damaged by a tornado.

The Deputy Director of the Department of Agriculture upheld in part and reversed in part the decision of the hearing officer. The Deputy Director ruled that Brightleaf "did not timely file a notice of loss on . . .Units [129 and 133] for tornado damage" because "there simply [was] no evidence that" Brightleaf notified its insurer "within 72 hours of initial discovery of the tornado damage [or that it] confirm[ed] the loss in writing within [15] days." That ruling, the Deputy Director explained, was based on a "careful review of the pre-hearing audio" recording, which "reveal[ed] that no such statement or stipulation occurred" that Brightleaf gave oral notice of tornado damage to Unit 133, and on the "conce[ssion]" by Brightleaf that the record did not contain "a document generated by Insurer showing that [Brightleaf] reported the loss in person the day after the tornado

6

occurred." But the Deputy Director "reversed [the] determination that the tropical storm damaged Unit 129" on the ground that Brightleaf "only claim[ed] that a tornado damaged" Units 129 and 133.

## II. STANDARDS OF REVIEW

We review <u>de novo</u> a summary judgment, "applying the same standard as the district court." <u>Mahon v. U.S. Dep't of Agric.</u>, 485 F.3d 1247, 1252 (11th Cir. 2007). "[E]ven in the context of summary judgment, [the decision of a federal administrative agency] is entitled to great deference." <u>Id.</u> at 1253 (quoting <u>Ala.–Tombigbee Rivers Coal. v. Kempthorne</u>, 477 F.3d 1250, 1254 (11th Cir. 2007)). Under the Administrative Procedure Act, we may set aside a decision of a federal agency only if it is "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." <u>Id.</u> (citing 5 U.S.C. § 706(2)). A decision is supported by substantial evidence when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Stone & Webster Constr., Inc. v. U.S. Dep't of Labor</u>, 684 F.3d 1127, 1133 (11th Cir. 2012) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

## III. DISCUSSION

Brightleaf challenges the final agency determination by the Deputy Director of the Department of Agriculture. Brightleaf argues that Rigby's affidavit

7

establishes that timely notice was given for tornado damage to Units 129 and 133. In the alternative, Brightleaf argues that it is entitled to insurance benefits for damage caused by the tropical storm to Unit 129.

Substantial evidence supports the determination of the Deputy Director and every other agency official to review the case that Brightleaf failed to give timely notice of tornado damage to Units 129 and 133.  The regulations governing common crop insurance policies require that an insured provide "notice, by unit, within 72 hours of [the] initial discovery of damage or loss of production (but not later than 15 days after the end of the insurance period, even if [it] [has] not harvested the crop)."  7 C.F.R. § 457.8 ¶ 14(b)(1) (Common Crop Insurance Policy Basic Provisions).  To comply, the insured must provide notice "within 72 hours . . . by telephone or in person to [the insured's] crop insurance agent [that] must be confirmed in writing within 15 days."  Id. ¶ 14(b)(4).  Rigby argues that his affidavit establishes that he gave oral notice of tornado damage to his insurer on July 28, 2008, but Rigby does not dispute that he failed to provide timely written notice of the damage.  Brightleaf filed a written notice reporting damage to its crops on August 25, 2008, but that was submitted more than two weeks after the deadline expired to give written notice of the tornado damage.

Substantial evidence also supports the determination of the Deputy Director that Brightleaf did not request indemnification for Unit 129 based on damage

8

caused by the tropical storm.  The Deputy Director was entitled to rely on Rigby's statements in his affidavit that he sought indemnification for Unit 129 based solely on damage caused by the tornado.  Rigby averred that he told his crop insurance agent that Units 129 and 133 had been damaged by the tornado; he "reported another loss due to a Tropical Storm on an entirely different farm unit"; and the "loss [caused by the tropical storm] had nothing to do with the July 25th loss."

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the Federal Crop Insurance Corporation.