[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 21-10182
Non-Argument Calendar
_____

D.C. Docket No. 1:20-cv-20611-RNS

DERYA KARA,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 2, 2021)

Before WILLIAM PRYOR, Chief Judge, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Derya Kara appeals the summary judgment in favor of the United States Citizenship and Immigration Services and against her complaint to compel the agency to grant her a visa to enter the United States as an alien investor, 8 U.S.C. § 1153(b)(5). The agency denied Kara's petition for a visa on the ground that she failed to submit "evidence that [she had] invested . . . capital obtained through lawful means." *See* 8 C.F.R. § 204.6(j). The district court ruled that it could not "set aside [an] agency action" that was not "arbitrary or capricious." *See* 5 U.S.C. § 706(2)(A). We affirm.

An alien may obtain a visa to enter the United States by investing capital from a lawful source into a for-profit enterprise that results in the creation of full-time jobs for at least ten citizens or legal permanent residents. 8 U.S.C. § 1153(b)(5)(A). An alien can become eligible for an employment-creation visa by submitting "a petition . . . accompanied by evidence that [she] has invested, or is actively in the process of investing, capital obtained through lawful means . . . ." 8 C.F.R. § 204.6(j). The capital must consist of cash, assets, "cash equivalents, and indebtedness secured by assets owned by the alien investor," and cannot be "acquired, directly or indirectly, by unlawful means (such as criminal activities) . . . ." *Id.* § 206.4(e). "To show that the . . . capital [is] obtained through lawful means, the petition must be accompanied" with evidence of the origins of the investment funds. *Id.* § 206.4(j)(3). Relevant sources include "business registration

2

records," "[c]orporate . . . and personal tax returns . . . or any other tax returns of any kind filed within five years . . . with any taxing jurisdiction," "[e]vidence identifying any other source(s) of capital," and "[c]ertified copies of any judgments or evidence of all pending governmental civil or criminal actions . . . [and] governmental administrative proceedings . . . against the petitioner from any court in or outside the United States within the past fifteen years." *Id.*

On March 9, 2015, Kara, a native and citizen of Turkey, petitioned for classification as an alien investor. When Kara filed her petition, an alien could receive a visa if she invested no less than $500,000 in a targeted commercial area that benefitted at least 10 citizens of, aliens lawfully admitted to, or immigrants allowed to be employed in the United States. 8 U.S.C. § 1153(b)(5)(A), (b)(5)(B)(ii), (b)(5)(C)(ii). Kara invested $620,000 in a company named Lexor Miami, Inc., which she created to operate a small shopping mall in Miami, Florida.

Kara attached to her petition bank records showing that, on September 5, 2013, she wrote a check to Lexor for $620,000, which originated from a balance of $140,000 in her account combined with $480,000 that her other company, Optimystik Eyewear, Inc., deposited into Kara's account on September 4, 2013. Kara submitted reports about the operations and development of Lexor, bank statements for Optimystik, and the first pages of its corporate returns for tax years 2011 to 2013. The 2013 transfer to Kara was not recorded on the Optimystik return

for tax year 2013. Kara provided no explanation for the transfer, such as it constituted a loan, dividend, or distribution, nor did she submit a personal tax return.

The agency sent Kara a notice of intent to deny her petition. The notice stated that funds "associated with Optimystik Eyewear, Inc. were seized," that Kara "accepted a settlement payment while forfeiting the remaining funds to the United States," and that, "in light of these events the lawfulness of [her] investment funds is called into question." The agency requested additional evidence to establish the lawful source of Kara's investment funds.

Kara responded that her investment funds were lawful profits of Optimystik. She stated that, in 2014, she received notice that $40,513.74 had been seized on suspicion of a "black peso violation," that amount equated to 0.003% of company revenue, and that the transaction was flagged because two Colombian wholesale customers deposited cash payments into the company bank account. Kara explained that she settled the matter after calculating the cost of a lawsuit, and she submitted an affidavit disclaiming any wrongdoing. The settlement agreement, which Kara executed in July 2014 and attached to her response, stated that $16,205.50 "shall be administratively forfeited to United States pursuant to 18 U.S.C. §§ 981 and 983 and 18 U.S.C. § 1956" in exchange for the return of $24,308.24 and that the stipulation was not an admission of liability. Kara

4

submitted an article titled *The Black Peso Money Laundering System*, which described how drug traffickers used legitimate business purchases to launder drug money. Kara also submitted a letter written by the accountants for Optimystik, in which they stated there had been no money laundering, black peso transactions, or other financial impropriety by the company or its management and that it had $11,646,118.29 in sales between January 2010 and December 2013. In addition, Kara submitted copies of the sales report for Optimystik from 2010 to 2013 and of the summary page of tax returns it had filed with the State of Florida between January 2010 and January 2014.

The agency denied Kara's petition for a visa on the ground that her investment in Lexor was "acquired, directly or indirectly, by unlawful means . . . [and could] not be considered capital." *See* 8 C.F.R. § 204.6(e). The agency considered all of Kara's evidence, including her assertion that Optimystik had been a victim of black peso operations and her evidence that the $40,513.74 seized was a small fraction of its revenues. The agency found that the money Kara invested in Lexor did "not appear to be lawful" because the funds seized from Optimystik were related to narcotics proceeds and were commingled with other company funds.

Kara complained that the decision to deny her petition was arbitrary and capricious. She argued that she produced evidence that the funds invested in Lexor

derived from the more than $12 million Optimystik made in retail and wholesale sales and that the burden then shifted to the agency to prove the funds were not obtained lawfully. Kara moved for summary judgment.

The agency also moved for summary judgment. The agency argued that Kara failed to prove that her investment funds were not tainted. And the agency highlighted that Kara submitted no personal tax returns, which were required by the regulations to establish eligibility for a visa. *See id.* § 206.4(j)(3)(ii).

The district court denied Kara's motion and granted summary judgment in favor of the agency. The district court ruled that Kara failed to establish that "[t]he 'complete path' of her investment funds was . . . wholly devoid of illicit narcotics trafficking proceeds." The district court also ruled that the agency did not abuse its discretion by denying Kara's visa application because she "fail[ed] to make an adequate record" that "individually or collectively trace[d] her investment funds to a lawful source."

We review *de novo* a summary judgment. *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1252 (11th Cir. 2007). "[E]ven in the context of summary judgment, [the decision of a federal administrative agency] is entitled to great deference." *Id.* at 1253 (quoting *Ala.–Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007)). Under the Administrative Procedure Act, a district court may set aside a decision of a federal agency only if it is "arbitrary,

capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1133 (11th Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The district court did not err by granting summary judgment in favor of the agency. Kara failed to create a material dispute that she was entitled to a visa as an alien investor by investing funds in Lexor that were "obtained through lawful means." *See* 8 C.F.R. § 204.6(j). Kara omitted from her petition that, months after Optimystik supplied $480,000 of the $620,000 investment funds, the government seized $40,513.74 of its proceeds on the suspicion that that cash payment by customers in Colombia was a "black peso violation." *See id.* § 206.4(j)(3)(iv) (requiring disclosure of governmental actions). None of the bank records, corporate records, or first pages and summaries of corporate tax returns that Kara submitted to the agency established that the investment funds Optimystik supplied came from a different account or had been isolated from the proceeds later seized by the government. Kara also submitted no evidence that the proceeds, which had been commingled with the investment funds, were untainted. Kara agreed to "administratively forfeit[] [forty percent of the funds seized] . . . pursuant to 18

7

U.S.C. § 1956," which prohibits money laundering. Optimystik admitted no liability in the agreement, but it did not exonerate the company. Although Kara and Optimystik accountants disclaimed any knowledge of money laundering, their ignorance was unsurprising when the article Kara submitted to the agency about black peso transactions explained that narcotics traffickers used legitimate business transactions to disguise money laundering.

No material factual dispute existed about whether the agency acted arbitrarily or capriciously by denying Kara's petition. For "[a] decision [to be] arbitrary and capricious . . ., the agency [must] rel[y] on factors which Congress has not intended it to consider, entirely fail[] to consider an important aspect of the problem, or offer[] an explanation for its decision that runs counter to the evidence before the agency." *High Point, LLLP v. Nat'l Park Serv.*, 850 F.3d 1185, 1193–94 (11th Cir. 2017) (internal quotation marks omitted and alteration adopted). Kara had "[t]o show that . . . [she had] invested . . . capital obtained through lawful means" to qualify for a visa as an alien investor. 8 C.F.R. § 206.4(j)(3). After discovering that Optimystik supplied a majority of the funds that Kara invested in Lexor, the agency gave Kara an opportunity to submit evidence that the funds from Optimystik were lawfully sourced. But Kara failed to do so. Because the administrative record evidenced that the funds Kara obtained from Optimystik were "acquired, directly or indirectly, by unlawful means (such as criminal

8

activities) [and could] not be considered capital," *see id.* § 206.4(e), and she had

not "invested . . . capital" in Lexor, 8 U.S.C. § 1153(e)(5)(A)(i), the agency had to

deny her petition for a visa.

We **AFFIRM** the summary judgment in favor of the agency.